BREAUX, C. J.
Plaintiff and his wife complain of injuries received by the latter and their children, for which they ask judgment in the sum of over $3,000.
Plaintiff’s wife and their children were riding in a surrey on Shrove Tuesday of last year. The horse they were driving was old and safe, and was moving at a slow gate out of Saratoga street into Tulane avenue. At this place they saw mules hitched to a beer wagon coming toward them. They veered to the left. It did not enable them to avoid the collision. The defendant’s wagon struck their surrey, broke it to pieces, knocked over their horse, and Mrs. Karstendiek and her children were thrown to the ground.
The mules hitched to the wagon started from the Chinese restaurant on Rampart street.
The driver of the wagon had delivered the kegs of beer to the customers of defendant, lie was on his way, when he concluded to stop at the restaurant and take lunch.
To assist him in handling the kegs of beer .and in delivering them he hired a helper on his own account.
The driver and the helper alighted from .the wagon and wont into the restaurant for lunch. When they stopped, the mules were facing Canal street. They were not hitched when the men left the wagon and went inside.
The contention is, on the part of defendant, that one of the wheels was locked.
To this we will again refer later.
There was a procession passing on Canal street, music, and the usual excitement incident to a crowded street.
The mules became frightened. They turn,ed around, took the neutral ground at Elk Place, and started for Tulane avenue.
The collision was not far from the corner at Saratoga street on the avenue.
Mrs. Karstendiek received a blow on her head in the fall, inflicting a wound which caused considerable pain, but was not dangerous.
The daughters were shocked, their dresses soiled' by the dust of the street in which they fell, the little sons, one of them the driver, were bruised in the fall, and the clothing of one of them badly torn.
They walked over to the Ear, Eye, Nose and Throat Hospital near by, invited by a physician connected with the hospital, who kindly gave them medical attention needed. They returned to their home.
To return to the driver: He testified that he ran after the mules, but could not make his way freely in the crowded street; that he fell to his knees in crossing, and in consequence could not catch up with them, although, after recovering from his slight fall, he continued to run after them.
He stated as a witness that he locked the wagon, using the chain for the purpose; that he was careful every time he stopped to take out the chain and lock one of the front wheels.
There was a chain produced in court, measuring a little over three feet in length and about three-fourths of an inch in thickness. It was found, as stated by the driver, after the accident in the street.
The two ends of this chain were held together by a snapper of galvanized iron, which disappeared, or at any rate never was found. The chain was not broken at all. Only the snapper was missing.
The driver produced another, similar, he said, to the one that could not be found.
This chain, in the locking process of the front wheel, extended from the center piece of the wagon to the wheel between the spokes, thereby stopping the wheels from turning.
This driver had been in the employ of the defendant for about two years and a half. *349 'The nrules were bought about a month before the accident. They were broken mules, bought from one of the local dealers in mules, who testified that they were broken.
We must say that in reviewing the facts we found that it was out of the ordinary, if the front wheel was securely locked, as stated by the driver, that the mules could wheel around to an opposite direction from that at which they had just been facing.
The driver says that after they turned they were only about 20 feet from him when he came out of the restaurant, and they were not running fast.
It is strange that he did not catch up with them. It is also strange that in such a short distance the snapper could not be found. There was great need of corroboration.
Inquiry was made during the examination about the helper — where he lived. The reply was that he did not know his name, although he had made some inquiry for him.
If those who drive wagons, lock the wheels, ■or any one of them, they should be ready to prove that they used all due precautions. They must be certain, and make it appear certain that the locking was entirely secure and safe.
It was imprudent, we think, to leave the mules without hitching or securing the wheels, so that it would have been impossible for the mules to run away.
On the day that the accident happened, in the bustle and noise of the crowded street, •as the purpose was to go and take lunch, this could have been done by one going in after the other, if it was not possible to securely hitch the mules or lock the wheels.
The mules had not been in defendant’s service very long. They had not been trained to stand. But, even then, it would not have been sufficient.
The testimony does not satisfy us that these mules were sufficiently checked or placed under control against possible accident.
This court has repeatedly decided that those who have animals in their charge must exercise due care in order to prevent them from committing injury.
The following are cases in point: Damonte v. Patton, 118 La. 530, 43 South. 153, 8 L. R. A. (N. S.) 209, 118 Am. St. Rep. 384; Zambelli v. Johnson, 115 La. 483, 39 South. 501; Westerfield v. Levis Bros., 43 La. Ann. 63, 9 South. 52; Maus v. Broderick, 51 La. Ann. 1153, 25 South. 977; and, lastly, in a case not yet published this court reaffirmed prior decisions upon the subject.
There was negligence ih leaving these mules, which is not explained away by the testimony.
Something was said in argument by learned counsel, and it was also alleged in the pleadings, about contributory negligence on the part of the family of plaintiff. It is averred that they were driving on the left of the street.
We have not found that they had yet arrived on that side of the street, although they were directing their course to that side of the street. In their movement to avoid the oncoming wagon, it may be that they turned to the left side of the avenue. There was no intention, as we infer, to violate the law of the road. It was an attempt at escaping.
In any event, the mere fact that one is driving on the left side of the street, when he should be on the right, is not ground sufficient to justify a collision such as the one the facts of which we have considered in this case.
The jury, in regard to the collision and its cause, arrived at a different conclusion. We have examined into this case bearing that in mind. We have been unable to arrive at the same conclusion.
If in all instances the appellate court must arrive at the same conclusion as the jury, it would be useless to appeal.
We must state, before concluding, that it *351 does not appear that the defendant or those in charge of its management were in any way negligent. They are only held liable because of the indifference and imprudence of the driver; it being the provision of the law that employers must answer for the negligence and imprudence of their employes, if any one be injured on that account.
We have considered the detailed items claimed by plaintiff. We do not think that we should pa'ss upon every item and decide to what extent clothing was soiled or torn. No one was seriously injured save Mrs. Karstendiek, and plaintiff’s surrey was broken to pieces. Fortunately for her, although the fall must have been severe, the result, as we understand, was not.
This is not a case of great injury, and for that reason we fix the amount of damages at $700 as covering all damages — personal injury, broken surrey, and torn clothing.
For reasons stated, the verdict of the jury and judgment of the district court are avoided, annulled, and, reversed. The law and the evidence being for plaintiff, it is ordered, adjudged, and decreed that plaintiff have and recover judgment in the sum of $700, with legal interest from the date of this judgment.