March 6, 1911.

———o———

5225.

(Court of Appeal, Parish of Orleans).

## FRANK ROUSEO vs. GAUCHE-CONNOR CO., ET AL.

1. The policy of the law is in favor of permitting the joinder in one suit of all parties who are charged with participation in an offense, or equal offense, whereby damage results, and

whose obligations are averred to be *in solido*.

> *Cline vs. C. C. R. R., et al*, 41 An. 1041.

2. The lessor is not answerable for the faults of his lessee, and if through the joint negligence of such lessee and some third person, the thing leased be injured, the lessor has a right of action against both.

3. The liability of the owner of a domestic animal for the damage it may cause, is not an unqualified one; there is no liability unless there be some fault.

4. Ordinary care requires only that precautions be taken against occurrences that can and should be foreseen; but does not require that one should anticipate unusual and improbable, though entirely possible, occurrences.

5. It is not negligence *per se* on the part of an owner or driver to leave for a short while unattended, but fastened with ordinary care, a horse, not vicious or unruly, and accustomed to the sights and noises usual in the streets of a city.

6. The owner of a horse, not vicious or unruly, is not required to secure him beyond all his power to break away even when frenzied by fear or pain. It suffices if the appliances which he uses be sufficient to check and restrain the animal on ordinary occasions.

7. Any horse may be driven to a frenzy of fear or pain by unusual or startling noises or appearances, or injury inflicted upon him; and if the happening which drives the horse to frenzy could not reasonably have been foreseen, the owner is not at fault, since the horse is a domestic animal, and such risks, connected with its use, are assumed by the public.

> *Zambelli vs. Johnson*, 115 La., 487.

8. A horse hitched to a laundry wagon was frightened by an elephant which came suddenly upon it in a city street. Held; That the appearance was a startling and unusual one, and could not reasonably have been foreseen.

Appeal from the First City Court, Division "B."

Theo. Roehl, for plaintiff and appellant.

J. J. McLoughlin, for defendant and appellee, Gauche-Connor Co.

Dinkelspiel, Hart & Davey, for defendant and appellant, Grunewald Co.

ST. PAUL, J.—Plaintiff sued the Gauche-Connor Co., and the Hotel Grunewald Co., in solido for the value of a horse belonging to him and killed through the alleged joint negligence of the defendants. The Gauche-Connor Co., set up an exception of misjoinder which was maintained and the suit was dismissed as to it.

The Grunewald Hotel Co. set up an exception of no cause of action which was overruled, and there was judgment against it for the value of the horse. Both plaintiff and the Grunewald Co., have appealed, the former complaining of the judgment only insofar as it dismisses his suit against the Gauche-Connor Co.

All parties have agreed upon a statement of facts; and the case, as between plaintiff and the Gauche-Connor Co. is submitted for such disposition thereof, whether on the exception or on the merits, as should have been made by the court a qua in the first instance. This was by agreement of counsel in open court.

The exception of misjoinder filed by the Gauche-Connor Co. should have been overruled. As we have said the defendants were charged with joint negligence and judgment was asked against them in solido. In the language of **Cline vs. Crescent City R. R. Co., et al., 41 An. 1041:**

"The policy of the law should be in favor of permitting the joinder of all parties who are in one suit, who are charged with participation in an offense, or quasi offense, and whose obligations are averred to be **in solido.** * * *"

The exception of no cause of action filed by the Grunewald Co. was properly overruled. It is based upon the fact that the Gauche Co., was the lessee of plaintiff's horse, and upon the assumption that, as its possession was his possession, therefore, its negligence was his

negligence; and hence there was such contributory negligence as to bar plaintiff's right to recover.

We do not think that the possession of the lessee is that of the lessor to the extent that the latter is responsible for the use which his lessee makes of the thing leased. The control of the lessor over the thing leased ceases with its surrender to the lessee, and the negligence of the latter, and the improper use which he makes of the thing leased, are entirely his own. The lessor is in no manner answerable for the faults of his lessee; and if through the joint negligence of such lessee and some third person, the thing leased be injured, the lessor has a right of action against both.

This brings us to a consideration of the merits.

Plaintiff alleges that his horse whilst in the control of the Gauche-Connor Co., his lessee, and whilst hitched to one of its delivery wagons, was left standing before the door of its establishment, unattended, unfastened, and facing in the wrong direction contrary to the provisions of law and the dictates of prudence. That whilst so standing a wild and unruly horse belonging to the Grunewald Co., and hitched to one of the latter's delivery wagons, came running along the street at a great rate of speed, without a driver to guide him, and ran into plaintiff's horse. That the shaft of the wagon to which said runaway horse was attached penetrated the chest of plaintiff's horse and killed him.

Plaintiff avers that the damage thus done was due, first, to the negligence of the Grunewald Co., or its servants, who had left an unruly horse standing unattended, and unfastened, in a public street, where there was much traffic, and where he was likely to become freightened and run away, causing damages to others; that it knew the horse to be unruly and likely to run away, and it was its duty to have some one in care of said horse, or have it

securely fastened with proper appliances, all of which it did not do..

Plaintiff further avers that the damages was likewise. due to the negligence of the Gauche-Connor Co., or its servants in leaving plaintiff's horse, unattended, unfastened, and facing the wrong direction on the street. That both defendants being equally negligent or culpable they are liable **in solido.**

The statement of facts on file admits the value of plaintiff's horse and that it was killed in the manner set forth in the petition, and that at the time of its death it was hitched to a delivery wagon belonging to the Gauche Co., which was backed up against the sidewalk in front of its establishment on the uptown side of Canal St., between Camp and St. Charles. That the horse was headed away from the river and towards the swamp; that the driver of the wagon had just left his seat and was in the doorway of the establishment carrying a package to the wagon to be loaded thereon.

The statement further shows that the horse which ran away belonged to the Grunewald Co., and was hitched at the time to one of its laundry wagons. That at a point, also on the uptown side of Canal Street, but nearer the swamp than the Gauche establishment and several squares away, the driver of said wagon left his seat on the box, and after wrapping the hitching strap, to which a weight was attached, around a post, went up to the third story of a building to deliver a package, leaving the horse and wagon unattended. That whilst the horse and wagon were thus standing unattended a show elephant, from one of the theatres, approaching, and the horse becoming frightened, broke the hitching strap and ran away.

The statement further shows, that the driver of the laundry wagon had seen the elephant on previous occasions parading the street, but had not seen it before on

that day. That he had driven the horse for two months, and it had never before ran away whilst under his care. That he did not know how many times he had wrapped the strap around the post, or that it was securely fastened, but he thought it was secure and had used the strap before for the same purpose. That the strap was an ordinary leather strap attached to a ring which in turn was attached to a small piece of leather, a few inches in length, and attached to the bit. It was the piece atached to the bit which broke.

There was an ordinance at the time of this occurence one section of which forbade any driver **when driving** along public streets to leave his seat or drop his hold on the reins; **Flynn's Digest Section 600.** But that this section has no application except when the vehicle is in motion, is clear from the very next section, No. 601, which prohibits the employment of more than one driver on any public cab and allows that driver to go ten feet from his vehicle when at a stand.

Nor has the Supreme Court of this State ever held that the fact alone that a horse was unattended, was sufficient to hold the owner liable for anything that might occur. And such is not the law, as we appreciate it.

In **Trenchard vs. Railways Co. et al., 123 La. 36,** the horse had been left **unattended and unfastened.** Such was also the case in **Zambelli vs. Johnson, 115 La. 483.** In **Damonte vs. Patton, 118 La. 530,** the court, with ordinance just cited before it, held:

> "It is negligence for the driver of a horse and cart to abandon his seat and hold on the reins. * * * **without fastening or otherwise securing the animal."** (Black-letter ours.)

In **Karstendiek vs. Jackson Brewing Co., 123 La. 346,** it was admitted that the mules were unattended, but the court inquired minutely into the nature of the fastening

by which the mules were said to have been held, and seems to have found as a fact that they were not fastened at all. Said the court, at page 349:

"We must say that in reviewing the facts we found that it was out of the ordinary, if the front wheel was securely locked as stated by the driver, that the mules could wheel around to an opposite direction from that at which they had just been facing."

And again:

"The testimony does not satisfy us that the mules were sufficiently checked and placed under control against possible accident."

In Shawhan vs. Clarke, 23 An. 390, the horse was fastened, but attended by a boy, and the court held that there was no negligence in the owner, as the horse "was not vicious or unruly and was not running at large, but was fastened with at least ordinary care in the usual place."

In a case lately decided by this court (Ladrix vs. De-Maggio Vol. 8, Ct. of. App.), we held, after reviewing the authorities, that the liability of the owner of a domestic animal for the damage it may cause, was not an unqualified one; that there was no liability unless there was some fault.

And we think that there is not, **per se,** fault in an owner or driver, who leaves for a short while unattended, a horse, not vicious or unruly, and fastened with at least ordinary care.

For no more than ordinary care is required of the owners of domestic animals. In their use and management one is obliged to do all that a person of ordinary prudence would do under the same circumstances, but no more. And common prudence requires only that one should take all precautions to guard against occurrences that can and should be foreseen; but it does not require

that one should anticipate unusual and improbable, though entirely possible occurrences.

To require more than this of the owners of horses would greatly impair; if not wholly destroy, the usefulness of this, the most valuable of all domestic animals, to the great and manifest inconvenience of the public.

Nor does the law require it. Thus it was held that it was not negligence for the owner of the horse to bring him to a stand near or over a visible steam pipe, "because there was no reason on the part of the owner or attendant to anticipate that steam would have been blown off through it at that hour, and without warning from the mill, and such was not the practice." And in **Zambelli vs. Johnson, 115 La. 483,** the court **argued thus, p. 487:**

> "* * * any horse may be driven to a frenzy of fear or pain by unusual or startling noises or appearances, or injury inflicted upon him. * * * If the happening which drives the horse to frenzy could not reasonably have been foreseen, the owner is not at fault, since the horse is a domestic animal and such risks connected with its use, it may be said, are assumed by the public."

In the case at bar the inquiry must, therefore, be whether the driver of the laundry wagon used ordinary care sufficient to guard against such occurrence as might be foreseen.

We think he did. The horse which he was driving was neither vicious nor unruly; he was accustomed to all the sights and noises usual in the streets of a city, and was not startled by any of these. On this occasion he was fastened in the same way and with the same appliance with which it was the custom to fasten him; and in a manner which appears to us as being usual, proper, and sufficient for all ordinary purposes.

True the strap broke; and naturally at the weakest

point, and had the horse been startled by one of the usual sights and noises to be met with in the street, it might be argued, and not without much show of reason, that the proof of the insufficiency of the appliance, was to be found in the fact of its failure to answer the purpose for which it was intended.

But the occurrence was not an ordinary one; and it argues therefore, nothing, that the strap with which the horse was fastened, proved insufficient to hold him. The strange appearance of a huge and uncouth beast, approaching suddenly and with awkward gait, was well calculated to drive a horse, by nature a timid and defenseless animal, into a frenzy of fear. Flight alone seemed to offer safety, and to flee he must burst chain, cord or strap that bound him. In this emergency the strap yielded, as would any chain, or cord, or strap, unless sufficient to resist the whole great strength of the animal.

But the owner of a horse, not vicious or unruly, is not bound to secure him beyond all his power to break away even when frenzied by fear or pain. It suffices if the appliances which he uses be sufficient to check and restrain the animal on ordinary occasions. That these should fail when subjected to some extraordinary test, or strain of unusual severity, is no evidence of negligence.

It may be admitted that the driver, had he anticipated the approach of the elephant at the time, should have remained near his own animal to quiet and control him. But he was not required to anticipate such a happening. Louisiana is not the home of the elephant, and these mammoth quadrupeds are seen only occasionally on the streets of New Orleans, when brought here by showmen and taken away again in a few days. So that even the fact that the driver had seen the elephant on previous occasions, was not a reason for anticipating his appearance on that day, much less at any particular hour or place.

We, therefore, find no negligence on the part of the

driver and hence no liability on the part of the Grunewald Co.

Nor do we see any fault in the Gauche-Connor Co., or its servants. At the time of the occurrence there was no ordinance prescribing the direction in which horses hitched to vehicles should be headed when standing in any of the public streets of this city; and in the absence of proof on that subject we will not assume that it was negligence to head a standing animal in any one direction rather than another.

The fact that the horse was not fastened was not negligence for the driver was within a few feet of him, in the very act, as it were, of loading the wagon; and in any event, the fact that he was not fastened, had no connection, whatsoever, with the accident, and contributed in no manner thereto. We find no liability on the part of the Gauche-Connor Co.

It is, therefore, ordered, adjudged and decreed that the judgment herein appealed from, be annulled, avoided and reversed insofar as the same condemns the Grunewald Hotel Co. Ltd., and it is now, ordered, that there be judgment against the plaintiff, Frank Rouseo, rejecting his demand, as to both defendants, at his cost in both courts.

March 6, 1911.

Rehearing refused, March 20, 1911.