BURKE F. W. C.
vs.
CLARKE ET AL.
notified ten days
after the acci-
dent, that the
vessel was ready
to take in the
cargo and pro-
ceed on her
voyage.

---

## BURKE, F. W. C. vs. CLARKE ET AL.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

The owners of a steam-boat, employed in carrying goods and passengers, are bound *in solido*, as in a commercial partnership, for all losses happening by the fault of the master of the boat, even if some or all of the owners were absent and unable to prevent such loss.

The master of a vessel who fails to deliver goods he has taken on freight, cannot be made to pay higher damages than the price of the articles at the place of delivery.

So, where the master took on board steamboat a slave, to bring her to New-Orleans, and failed to deliver her, but retained her for another trip, and the slave was lost : *Held,* that in an action for the value of the slave the owners of the boat were liable for *her value,* at the time and place of delivery, and no more. No posterior act could increase or diminish this liability.

This is an action to recover from the defendants, Thomas Clarke and Samuel Locke, owners of the steamboat Freedom, the sum of one thousand dollars, damages, for the

*value*, and two hundred and fifty dollars for the hire of a slave, named Eliza, retained on board said steamboat after the time agreed upon, and lost.

The plaintiff alleges, that Captain Clarke hired the slave in question the 13th of June, 1835, for one trip from New-Orleans to the upper country and back, as chamber maid, with the express understanding that she was to be delivered up on her return to New-Orleans, to the agent of the plaintiff. That some time in the following month, Clarke returned to the city with said slave on board, but refused to deliver her up to said agent, who came on board and demanded her; that on the next trip to Cincinnati, the said Clarke suffered the slave Eliza to escape, and she has not been heard of since.

The defendants pleaded a general denial. Upon these pleadings and issues the parties went to trial.

It was proved by the plaintiff's agent that Clarke agreed with the plaintiff, in his presence, to deliver up the slave to him (witness) on the return of the boat. That on her return, he called on Captain Clarke for the slave, but he refused to deliver her up, saying he would keep her all the summer, and take her to Cincinnati, where she would be safe, as he would not let her go ashore without some one accompanying her. In December following, Clarke returned in a new boat, called the Columbia, and told witness that the girl left him on the second trip up at Louisville.

Fortescue, a colored man, employed on board the Freedom at the time of this hiring, being called as a witness, says, the plaintiff came on board the steamboat, which was then about starting for Cincinnati, and said she was going to Nashville to see her child; that she had a servant girl which she wanted to hire to the captain, as chambermaid, until she returned. The name of the servant was Eliza. Witness heard the captain agree to give twelve dollars per month for hire, to which the plaintiff seemed to assent. The plaintiff went in the boat as far as Smithland. The servant girl went ashore with the plaintiff and returned on board the boat, which proceeded on to Cincinnati. Witness saw this same slave on board the Freedom when she returned to New-Orleans.

The cause was submitted to a jury, who returned a verdict of one thousand dollars for the value of the slave ; eighty-two dollars and fifty cents for wages and hire, and one hundred dollars in damages, against the defendants *in solido.* From judgment confirming this verdict, they appealed.

*Ives,* for the plaintiff, urged the affirmance of the judgment, which was fully supported by the evidence.

2 The appeal is frivolous and the judgment should be affirmed with ten per cent. damages.   *See Statutes of 1835, p. 152.   Louisiana Code, article 2294.*

*Carter,* for the defendants.

The judgment of the court below should be reversed.   1st. There is no evidence that either of the defendants took the slave of the plaintiff out of the limits of the state, against the consent of the owner, *to enable the slave to escape from the authority of her mistress,* and unless such is shown, the defendants cannot be made liable.   *See section* 1*st of act* 13*th February,* 1836.   1*st Moreau's Digest, p.* 379.

2. The defendant, Clarke, was expressly authorized by plaintiff to take the slave as a servant on board of the steamboat Freedom, of which Clarke was captain.   This agreement between plaintiff and defendant, Clarke, is fully established by the testimony.

3. The act of the legislature, passed March 26, 1825, and in virtue of which it is sought to bind Locke, one of the owners of the steamboat, does not apply to this case.   By reference to the law of February 7, 1816, and which law is expressly referred to in the 1st section, you will find that this case only makes owners responsible for the acts of their captains, in the event of the captain taking the slave out of the limits of the state, for the purpose of evading the authority of the master, and to enable the slave to go free.   The use of the words "to aid the escape of the slave," and which are used in the act of the legislature, fully justify this conclusion.

4. But suppose the law does intend to bind owners for the acts of their captain, in taking slaves out of the state without

the consent of the owners, even when (as in this case) it was impossible for the owners to know of the act of his captain, and if they had known it, to have prevented the act. We say, that such a law is absurd; its penalties cannot and should not be enforced, as it obliges citizens to perform impossibilities.

5. We contend that art. 2299 of the code is the one which should govern the liability of Locke, the part owner, and the testimony shows that we are entitled to the benefit of the exception contained in that article. Mr. Locke cannot be bound, (certainly not) unless it can be shown that he could have prevented the act of Clarke, the captain of the boat.

*Martin, J.*, delivered the opinion of the court.

The plaintiff took her passage on board of a steamboat, of which one of the defendants was master, and both of them owners, with a slave, which the master had agreed to hire as a chambermaid to the boat, and to deliver her on his return to the agent of the plaintiff, in New-Orleans, when he refused to do so, and took her on a second voyage, during which she made her escape or was drowned.

The present action was brought to recover damages for this injury. She had a verdict and judgment, and the defendants appealed.

It has been contended in this court, that the master of the boat alone was liable; that the other defendant, his joint owner, was not, because he was absent, and could not have prevented the injury. We do not think so; the boat was employed in carrying goods and passengers, and a partnership, for this purpose, is a commercial one; in which the parties are jointly and severally bound for the act of each other.

The verdict is for one thousand dollars, the value of the slave, eighty-two dollars and fifty cents for wages, and one hundred dollars damages. It appears to us that this is incorrect. The master of a vessel who does not deliver goods which he has received on freight, cannot be made to pay

Eastern Dist.
May, 1837.

Burke, f. w. c.
vs.
Clarke et al.

The owners of a steamboat, employed in carrying goods and passengers, are bound *in solido*, as in a commercial partnership, for all losses happening by the fault of the master of the boat, even if some or all of the owners were absent and unable to prevent such loss.

The master of a vessel who fails to deliver goods he has taken on

So, where the master took on board steamboat a slave, to bring her to New-Orleans, and failed to deliver her, but retained her for another trip, and the slave was lost: *Held*, that in an action for the value of the slave the owners of the boat were liable for *her value*, at the time and place of delivery, and no more. No posterior act could increase or diminish this liability.

higher damages than the value of the goods at the place of delivery. The rule must be the same in the case of a master who undertakes to carry a slave as a passenger; he must pay the value of the slave and no more. The right of the plaintiff to the value of her slave, was complete on the boat returning with her, and no subsequent event as her death, etc., could discharge the defendants from, or reduce their liability, which was then fixed, and could not be increased by the posterior services the slave might render, unless the plaintiff brought her action for the slave and her wages; as then she would acknowledge herself to be still the owner of the slave after the return of the boat, and then she must sustain the loss of the slave, and be satisfied with the wages, until the period of her death.

The plaintiff is entitled to one thousand dollars, the value of the slave, and her wages at twelve dollars per month, as stated by the witness Fortescue, from the departure of the boat from New-Orleans, until his refusal to deliver her up to the plaintiff's agent. There is no evidence how long the boat was absent on that voyage, and we allow one month.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Court below be annulled, avoided and reversed; that the plaintiff recover from the defendants the sum of one thousand and twelve dollars, with costs in the lower court, and the plaintiff paying those of the appeal.