No. 13,510.

JAMES ANDERSON vs. ELDER, DEMPSTER & Co.

## SYLLABUS.

1. The appliances for loading the ship which defendant was engaged in loading, were complete and in good order, except that a block, not in use, attached to the boom of the ship had not been moused. Attention of the foreman in charge had been called by one of the workmen under him to the fact that this block, as it was not moused, was dangerous. The block not moused was on the line of the wire rope, strung under the boom and operated by the winch. It was mid-way the boom. The other block which was being used when the accident happened was at the end of the boom. The foreman did not, immediately after having been notified, take steps to have the block taken down or moused. A few moments after, the wire rope struck the block, causing it to slip from the strap. In its fall it slipped on the rope to where the plaintiff workman was standing in charge of the winch and struck him, inflicting a wound in the head.

The danger was not open and apparent, and plaintiff, as a workman in charge
of the winch requiring all his time and attention, did not have opportunity
to be informed of the danger. The foreman, the day previous, had inspected
the appliances. He did not have the block taken down or moused on the
day following, when his attention was directed to the danger. The rule is
general that the master is responsible for any act of omission or commission
of his agent causing damages while acting in the scope of his employment.·
He, although he may not be present in person directing the work, is, as
relates to management and discipline, ordinarily needful, as far as rea-
sonably possible, to avoid casualties.

A PPEAL from the Civil District Court, Parish of Orleans—*St. Paul, J.*

*Darl & Kernan,* for Plaintiff, Appellant.

*Saunders & Gurley,* for Defendants, Appellees.

The opinion of the court was delivered by

BREAUX, J. This case is before us on a petition of plaintiff for dam-·
ages in the sum of five thousand dollars against the defendant firm and
against its members individually.

Defendants were contractors in charge of loading the ship Inchuloa.
Plaintiff is a longshoreman. He, and those with whom he was working,
were hoisting logs and loading the ship at the time the accident of
which he complains occurred.· He had charge of, and was running, the
steam winch. This work, it seems, required all of his time, care, and
attention while at work. He was with several others in the service of
the defendants. His place was on the deck behind the winch. In per-
forming the work in which he was employed he was surrounded by
staves. One of the number of the employés was a derrick man. He
held the guy and attended to the movements of the hoisting machine.
He gave the signal to plaintiff, who would, upon these signals, put on
or cut off the power as the work of lifting the freight from the wharf
and lowering it in the ship required. There was a foreman in charge
who directed the work.

The appliances, in addition to the steam winch, consisted of a boom
attached at the base to a ring around the mast for raising and loading
heavy freight. A wire cable ran under and along to the lower line of
the boom from the steam winch to near the end of the boom to and over
the pulleys in the block at the end, and then down the sling which

gripped the log and hoisted it to the ship's hatch and lowered it in the hull. There were two blocks on this boom, both large, weighing about fifty pounds. The one near the top of the boom was in use; the other at the centre was not in use; it was left attached to the boom, although idle, on the order of the foreman, who says it was left attached because it was the intention to use it at some future time. The centre block was not moused, that is, the hook by which the block was suspended from the boom had not been closed as usual. It is done by binding the point and shank of the hook, thus preventing the block, to which it is suspended, from falling.

The defendants' superintendent of the outside work of loading and unloading ships, as a witness for defendants, testified that mousing is done to hold the block in the strap; that the blocks are furnished by the defendants. The foreman of the defendants on board of the ship inspected the hoisting appliances before beginning with the work of hoisting. The blocks were attached to the boom, as they were, under his direction. The cable wire under the boom when being drawn taut by the winch struck the idle block on the boom and struck it out of the strap by which it was suspended. The block then slipped down on the wire rope in an oblique direction to the place plaintiff was standing at the winch, fifteen or twenty steps back, struck him, and inflicted a wound on his head.

It is evident that defendants undertook, as was their duty, to provide suitable appliances for the work in hand, but the failure to mouse the block was one that should have been avoided. We are informed that it would have taken a few minutes' time only.

The defendants insist that the danger was open and apparent, and that the plaintiff, as a workman, had equal, or superior, knowledge of the danger. The proposition that the servant is to avoid all dangers that may be discovered by ordinary care, if sustained by the facts, must be considered as controlling. The testimony discloses that the foreman knew that the idle block attached to the centre of the boom was not fastened in the usual way. His attention was called to the unmoused hook by the derrick man, who said to the foreman that, unmoused as it was, it was dangerous. This derrick man had charge of boom. He turned it horizontally by stays or guys in hoisting freight. He could see the whole of it. While on the other hand, it is not shown by the testimony that plaintiff knew that it was not moused. He denies, as a witness, that he had any knowledge of the fact that the block

had not been moused. In support of his denial, he points to the fact, not controverted by any of the witnesses, that he was surrounded by staves; that the running of the winch required all his time; that he was some fifteen or twenty steps in an oblique direction from the block when it was suspended. The foreman and the derrick man and the employés in and about the hatch were in a better position to see the block and to discover that it was not moused.

We have not found it possible to conclude that it was the duty of, or that any obligation rested upon, this winch man, the plaintiff, to look carefully around to see if the appliances not immediately under his control had been made perfectly secure. This was, we take it, the work of others. His duty was to run the winch, to loosen or tighten the cable, as he was directed by the derrick man.

From one of the points of view of the issues presented, it is not certain that it was quite apparent, at a mere glance, that the block was not moused. The foreman, who had inspected the appliances, swore that the block was moused. To show the contrary, two witnesses testified. Their testimony and corroborating circumstances sustain the contention that it was not moused. The testimony of the uncorroborated foreman can not prevail.

One of the questions involved is based upon the fact, shown by the testimony, that the position of the block was dangerous to the men working in the hold, but not apparently dangerous to one working at plaintiff's (Anderson's) station. We find, at this point, some variance between one of defendants' positions that the danger was apparent to every one and the other that it was not a danger forseeable in so far as plaintiff is concerned, and he was not under the block or within such a distance as to give rise even to the intimation that the block, in its fall, would take the course it did. Be this as it may, there was danger, as the result shows. The defendant, through its foreman, had been warned by those in a position to see the danger and the plaintiff had not. Because of this warning it had become an apparent danger to the defendant, but not to the plaintiff.

The fact that the block took an oblique instead of a perpendicular direction, does not lessen the liability. The immediate cause of the accident was the slipping of the block from the strap. The direction of the fall did not have the effect of relieving defendants, admonished as they were through the foreman, from liability. The act was one act, continuous, united and inseparable, when considered with reference to

the responsibility of the parties. "It is also negligence for which the master may be held responsible, if, knowing of any peril which is known to the servant also, he fails to remove it in accordance with his assurance that he will." Cooley on Torts, p. 661. True, the foreman had not been warned by plaintiff, but he had been sufficiently warned by a co-servant to whom he, the foreman, it seems, said that he would have the block taken down.

Able and energetic counsel, in the next place, cite the article of the Civil Code 2317 with reference to the extent of the master's responsi-. bility, arising only, they contend, when he might have prevented the act. This article has, several times, of late years, been pressed upon this court's attention. It has been repeatedly considered that, under the spirit of this article, intended to govern the relations between master and employe, it is not subject to the strict construction for which the defendants contend. By the first paragraph of the article, masters are answerable for the damages occasioned by "servants and overseers." The last paragraph of the article, containing the asserted restriction, does not have the effect of limiting liability to cases where the master has had ample opportunity to prevent the act and failed to avail of it. This would have the effect, if very strictly construed, of limiting the responsibility of the master to an extent that would enable him to escape liability, though at times ngeligent or grossly indiffer- ent. Discipline, good management, and interest in the work personally, or through superintendents, foremen and others in charge, are, we think, to be considered as part of the duties enabling the master to prevent liability. We are dealing with a principle or rule which gov- erns in managing or directing labor. In this particular case, we have every reason to believe that the foreman was competent. It happened that while he was in charge, one of the employes was struck and wounded. The casualty falls within the provisions of law fixing liability. As a general rule it must be enforced.

We would not be justified, in view of the prior decisions, were we to make an exception in this case. In Nelson vs. R. R. Co., 49 A. 492, this court said that the cited article *supra* "had no application to a corporation capable of acting through agents."

We have found no good reason to limit the construction as applying only in so far as corporations are concerned. If it has application to one, it should have application to the other. The negligence is not less in degree whether it be a corporation, a firm, or an individual, who

Becnel vs. Plantation Co., Ltd.

employs labor. Employes are entitled to the same protection, whether employed by corporations, partnerships, or individuals. "Every person owes to every other the duty of due care to avoid injury, and whether he manages his business in person or he trusts it to others, he must, at his peril, see that this obligation is observed." Cooley on Torts, second edition, page 631.

This brings us to a consideration of the amount which should be allowed as damages. Prominent members of the medical profession, testifying, have disagreed regarding the extent of the injury suffered. From the evidence, we infer that plaintiff has recovered his health. He testifies that on account of his wounds he was unable to work for some time. While at work, his earnings were about twelve dollars per week. Our view of the casualty and the circumstances lead us to the opinion that the damages should be assessed at five hundred dollars.

Considering the law and the evidence, the judgment appealed from is annuled, avoided, and reversed.

It is further ordered, adjudged, and decreed, that plaintiff recover judgment of the defendants in the sum of five hundred dollars, with legal interest from the date of the judgment, and costs of both courts.

Rehearing refused.