Statement.
MONROE, J.
Defendant appeals from a judgment awarding the plaintiff $500 as damages for personal injuries sustained by him through the alleged negligent discharge by one of defendant’s servants of the duties for which he was employed. The plaintiff answers the appeal and prays for an increase in the amount of the judgment.
It appears from the evidence that on January 12, 1904, John Dominick, William Tóale, and the plaintiff, employés of the Crescent City Jockey Club, were engaged in the discharge of certain functions at a gate situated some 30 feet from the end of the grand stand and leading into the race track; that still nearer the end of the stand and facing the track stood a two-horse carriage, owned by the defendant, of which Martin Menzer was the driver, and that alongside, and a little way to the rear, of the carriage was a one-horse vehicle, also owned by the defendant, of which August Bell had charge. Neither of the teams was hitched, and neither of the drivers was occupying the box seat of his vehicle, and whether Menzer was standing near his horses or was 8 or 10 feet away from them, is a question about which there is some conflict in the testimony. It also appears that between two of the races, and whilst the gate in question was opened in order to allow the horses which had been and were to be engaged therein to leave and enter upon the track, a horse somewhere in the rear of the two vehicles mentioned became frightened, and, breaking away, dashed a buggy to which it was attached against the structure constituting the entrance to the club grounds, and the noise is said to have frightened the horses attached to the defendant’s vehicles. Bell succeeded in catching and holding his horse, and Menzer testifies that he “grabbed” his right-hand or off horse by the head with his left hand, and attempted to stop his team in that way but that he was thrown against the railing, and, losing *256 his hold, fell to the ground. Be that as it may, the fact remains, that his horses ran away, that they ran through the gate, that Dominick and Tóale, special officer at the gate and gatekeeper, respectively, succeeded in escaping them by jumping briskly out of the way, but that plaintiff, who happened to be looking in another direction, was knocked down and injured. An attempt was made, through the testimony of the defendant’s two drivers, to show that plaintiff tried to stop the horses; but the testimony of these witnesses is confused and unsatisfactory, and is contradicted by that of the plaintiff and of Tóale, the witness last named testifying that he (plaintiff) did not have time to make such an attempt, as he was “looking toward the stretch, on the other side of the gate, and got caught” by reason of the horses coming so quickly. The plaintiff’s injury consisted of a fracture of the first metatarsal bone of the left foot, as a consequence of which he suffered considerably, was confined to his room for some time, was obliged to keep his foot in plaster and bandages for nearly seven weeks, and had to use crutches and a stick until some time in April following the ae-cident. The Jockey Club paid his wages, but he testifies that he was subjected to extra expenses, including surgical and other attention, amounting in the aggregate to $157.
Opinion.
The brief filed by the learned counsel for the defendant contains, as its syllabus, the following syllabus of an opinion by our predecessors in this court, to wit:
“A person owning a horse and buggy is not .responsible to another for the damage caused by his horse running away with the buggy and against another horse and buggy, if the running away of his horse was not caused by his carelessness or negligence, but was caused by some other person or agency over which he could exercise no control.” Shawhan- Case, 24 La. Ann. 390.
The case to which this doctrine is applied was thus stated by the court:
“The evidence shows that each party had placed his horse and buggy not more than 12 or 15 feet apart in the place allotted for such purposes in the Fair Grounds, and each in charge of a boy, or lad; the defendant having his animal also tied to a tree. Not long afterwards, and whilst each of said teams was standing and quiet, a third party, driving a horse and buggy rapidly, ran against the buggy of the defendant, injuring it and the harness, and causing the horse to break his fastening, and in the fright run suddenly against the plaintiff’s horse, inflicting a wound with the shaft of the buggy which resulted fatally. Under this state of facts the defendant was not guilty of negligence or fault, and does not, therefore, come within the application of articles 2315, 2316, Rev. Civ. Code. His animal was not vicious or unruly, was not running at large, but was fastened, with at least ordinary care, in the" usual place and where the plaintiff and others had put theirs.”
The differences between the case cited and the ease at bar are obvious. It may be, and doubtless is, a sufficient precaution against accident to tie a single horse, ordinarily gentle, to a tree, at a place provided for that purpose upon the Fair Grounds, and to leave a lad to watch him; but it does not follow that like precaution would be sufficient with respect to a double team similarly situated, and it by no means follows that a double team may be safely left, wholly unsecured and with no one holding the reins, near the main entrance of a race track, whilst the races are being run. There is no direct evidence before us as to the character of the horses by which the injury complained of was inflicted; but, from the fact that they were soon caught and brought back, without having injured themselves or the carriage to which they were attached, it may be assumed that they were not dangerous or intractable,
and it is a fair presumption that, if the driver had been on the box, with the reins in his hands, instead of being in a position where he could, at best, only “grab” one of the horses by the head with his left hand, he would have had no difficulty in preventing them from running away. No doubt a case, might be presented where even the precaution suggested would prove unavail *257 ing, since there are, no doubt, horses that become uncontrollable without apparent reason, and any horse may be driven to a frenzy of fear or pain by unusual or startling noises or appearances, or by injury inflicted on them.
In the first case, the owner, knowing the character of the horse, uses him in frequented places at his own risk, since it is rank disre1gard of the safety of the public to so use an animal that may at any moment, and, so far as the human mind can determine, without cause, become dangerous to human life. In the second case, if the happening which drives the horse to frenzy could not reasonably have been anticipated, the owner is not a.t fault, since the horse is a domesticated animal, and such risks connected with his use, it may be said, are assumed by the public. In the instant case the horses were not driven to frenzy, and, as we think, might easily have been controlled if there had been any one in the proper position to control them. The proximate cause of the accident was, therefore, the negligence of the driver in abandoning his seat upon the box and his hold upon the reins, and in allowing the horses to stand, and practically run, at large. The evidence fails to satisfy us that there was any contributory negligence on the part of the plaintiff, or that there should be any change in the amount of damages awarded.
The judgment appealed from is accordingly affirmed.