157 So. 121

**JOHNSON v. BUTTERWORTH.**

No. 32826.

Oct. 2, 1934.

his infant daughter; and that, on a certain occasion when she, the nurse, was performing the duties of her employment and attempted to take the child into her arms, the child "displayed a vicious temper" and bit her on the arm, inflicting a wound which caused great pain and compelled her to lose twenty-three days of employment. She claims $1,000 damages for the alleged physical suffering and loss of wages. The age of the child is not stated in the petition; but it is not alleged that she was old enough for her conduct to be deemed culpable; and in fact it appears and is not disputed that she was exactly three years and two months old on the date on which she is said to have bitten the nurse.

The district judge dismissed the suit on an exception of no cause of action. The Court of Appeal reversed the judgment and ordered the case remanded for trial. 152 So. 166; 153 So. 58. The defendant has brought the matter here on a writ of review.

H. P. Viering, of New Orleans, for plaintiff.

James G. Schillin, of New Orleans, for defendant.

O'NIELL, Chief Justice.

The question in this case is whether the parents of an infant, too young to be deemed guilty of an offense or a quasi offense, are liable for damages for bodily injuries inflicted by the infant upon a third person, there being no charge of fault or negligence on the part of the parents.

The plaintiff avers that her occupation is that of a nurse; that she was employed by the defendant, Bruce Butterworth, to nurse

The suit is founded upon the plaintiff's contention that article 2318 of the Civil Code makes the parents liable for any act of their minor child that causes damage to another person, even though there is no fault or negligence on the part of the parents, and no offense or quasi offense or negligence, imputable to the child. The article, which through translation has lost some of its grammatical expression, provides:

"The father, or after his decease, the mother, are responsible for the damage occasioned by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons.

"The same responsibility attaches to the tutors of minors."

In the French text of the article (2297) in the Code of 1825, the language, translated literally, is: "The father, and after the death of the husband the mother, are responsible for the damage caused by their minor children, not emancipated," etc. In the *Code Civil* of France, in article 1384, from which the article in the Louisiana Code was taken, there is no such qualification as "not emancipated," and the liability of the parents for damages caused by their minor children is limited to cases where the children are "residing with them." The literal translation of that paragraph of the article of the French Code is: "The father, and after the death of the husband the mother, are responsible for the damage caused by their minor children residing with them." When this paragraph was adopted in the so-called Code of 1808, or "Digest of the Civil Laws in Force in the Territory of Orleans," in book 3, tit. 4, § 2, art. 20, under the heading "Of Quasi Crimes or Offenses," the language was changed so as to specify that the parents were responsible for only the offenses—"*des délits*"— committed by their minor children, viz.: "*Le père, et la mère après le decès du mari, sont responsables des délits de leurs enfans mineurs.*" The words "*des délits*" were translated into "the delinquency," which is one meaning of the word "*délit*"; but the more accepted meaning of the word "*délit*," and the meaning which fits better into the context, is "offense"; for we find in the same French dictionary the term *quasi délit* defined as "*injury caused involuntarily by imprudence or negligence.*" All of which indicates that the intention was to make the parents responsible for damages caused by the fault or negligence of their minor children, but not for damages caused by their minor children without any fault or negligence on the part of either the parents or the children.

The exception of no cause of action in this case—or what is termed in other jurisdictions the general demurrer—is based, primarily, upon the proposition that a child under four years of age cannot be deemed guilty of an offense or a quasi offense, and that, as there is no liability for damages for tort without fault or negligence on the part of some one, there is no liability on the part of the parents of a child under four years of age, for damages for an act of the child causing injury to a third person, unless there is fault or negligence on the part of the parents.

 It is well settled in Louisiana that the doctrine of contributory negligence does not apply to a child under four years of age. Hamilton v. Morgan's L. & T. R. & S. S. Co., 42 La. Ann. 824, 8 So. 586; Thorp Westerfield et al. v. Levis Bros., 43 La. Ann. 63, 9 So. 52; Barnes v. Shreveport C. R. Co., 47 La. Ann. 1218, 17 So. 782, 49 Am. St. Rep. 400; Rice v. Crescent City R. Co., 51 La. Ann. 108, 24 So. 791; Danna v. Monroe, 129 La. 138, 55 So. 741; Palermo v. Orleans Ice Mfg. Co., 130 La. 833, 58 So. 589, 40 L. R. A. (N. S.) 671.

It is argued for the plaintiff that the rule— which is conceded to be well established— that a child under the age of four years is not responsible for his or her negligence—or contributory negligence—does not mean that a child under four years of age cannot be guilty of negligence or contributory negligence, but means merely that a child that young is not legally responsible—and cannot

be held financially liable—for his or her fault or negligence. But that argument is not consistent with the provisions of the Civil Code declaring that a minor is liable for damages resulting from an offense or a quasi offense committed by him. Article 1785 declares: "The obligation arising from an offense or quasi offense, is also binding on the minor." Article 1874, referring to the obligations of a minor, declares: "He is not relievable against obligations resulting from offenses or quasi offenses." And article 2227 repeats the statement, but adheres to the French word *restituable*, meaning "entitled to relief," viz.: "He is not restituable against the obligations resulting from his offences or quasi offences." All of these articles were taken literally from the *Code Civil Francais;* and they were declared to hold a minor liable for his tort, in Lutcher & Moore Cypress Co. v. Schexnaydre, 11 La. App. 72, 122 So. 911, and in Kern v. Knight, 13 La. App. 194, 127 So. 133. It is to be observed that these articles of the Code, which hold minor children liable for damages resulting from their offenses or quasi offenses, do not except very young children, or fix a minimum age limit. Hence the rule, established by the jurisprudence, that a child under the age of discretion is not chargeable with negligence, or contributory negligence, is not consistent with the idea that a child that young, though not responsible for his negligence or his offenses or quasi offenses, may be deemed legally guilty of negligence or of an offense or a quasi offense for which the parents may be held liable, without any fault or negligence on their part.

The principal reason, given for the ruling by the Court of Appeal in this case, that the parents of a child under four years of age are liable for damages for an injury inflicted willfully by the child upon a third person, without any fault or negligence on the part of the parents, is that, in the transcribing of article 1384 of the French Code, as article 2297 (now 2318) of the Louisiana Code, there was omitted the *proviso*, in article 1384 of the French Code, that the parents of a minor child are not liable for damages for a tort committed by him if they can prove that they could not have prevented the act which caused the damage. But that difference between article 1384 of the French Code and article 2318 of the Louisiana Code, with reference to the liability of parents for damages caused by the acts of their minor children, is entitled to explanation. In the first place, the *proviso* in article 1384 of the French Code, that the parents are not liable for damages done by their minor children unless the parents could have prevented the act that caused the damage and failed to prevent it, has nothing whatever to do with the question, whether the parents—without fault or negligence on their part—are liable for damages done by a minor child too young to be deemed guilty of an offense or a quasi offense. In the second place, this difference between article 1384 of the French Code and article 2318 of the Louisiana Code, with regard to the liability of parents for torts committed by their minor children, seems to have resulted merely from the arranging of the several paragraphs of article 1384 of the French Code into separate articles in the Louisiana Code; and it is possible that this result, although of some effect, was accidental, as we shall proceed to explain.

Article 1384 of the French Code provides not only that parents are liable for damages

caused by the acts of their minor children, but also that masters or employers are liable for damages caused by the acts of their servants or employees; that instructors are liable for damages caused by the acts of their pupils; and that artisans or mechanics are liable for damages caused by the acts of their apprentices; and the article concludes with this qualifying paragraph, viz.:

"The liability in the above cases exists unless the father and mother, instructor and artisan, prove that they could not prevent the act which gives rise to the liability."

It is to be observed that, in this exception to the liability of the parents for the acts of their children, and the liability of instructors for the acts of their pupils, and the liability of artisans or mechanics for the acts of their apprentices, there is no mention of the liability of masters or employers for the acts of their servants or employees,—notwithstanding the liability of masters or employers for the acts of their servants or employees is provided for in the same article, 1384, in the French Code.

In adopting the provisions of article 1384 of the French Code, in the Code of 1808, or Digest of the Civil Laws in Force in the Territory of Orleans, all of the provisions of the article were placed in one article, article 20 of section 2 of title 4 of book 3, viz.:

"Art. 20. Every person is responsible not only for the damage which he causes by his own act, but also for that which is caused by the act of any person for whom he is answerable, or by anything which is in his keeping.

"The father, and after the death of the husband, the mother is responsible for the delinquency of their minor children.

"Masters and principals are responsible for the delinquency of their servants and agents in the functions in which they have employed them.

"Institutors [meaning instructors] of youth or artisans are answerable for the delinquency of their scholars [meaning pupils] or apprentices.

"The above responsibility takes place only when the parents, masters or principals could have prevented the delinquency and have failed to do it. They are considered to have been able to prevent the delinquency [délit] when it was committed through their neglect to watch over the conduct of those for whom they are answerable, or when it was committed in their presence."

It is to be noted that, in the paragraph exempting "the parents, masters or principals" from responsibility when they could not have prevented the act of the child, or servant, or agent, as the case might be, there is no mention of instructors, or of artisans or mechanics, with regard to their responsibility for the acts of their pupils or apprentices. It is not at all likely, though, that this omission was made deliberately, with the intention of making an instructor or an artisan liable absolutely for the acts of his pupil or apprentice, and at the same time making the parents and the master or principal liable for the acts of their children or servants or agents, as the case might be, only in cases where the parents or the master or principal could have prevented the injurious act but failed to prevent it.

When this article, which was composed of the several paragraphs of article 1384 of the French Code, was adopted in the Louisiana

Code of 1825, the several paragraphs became separate articles. The first paragraph became article 2296, which was retained literally as article 2317 in the revision of the Code in 1870; the second paragraph, referring to the responsibility of parents for the conduct of their children, became article 2297, and was retained, in substance, as article 2318 of the Revised Civil Code; but the third, fourth, and fifth paragraphs were embodied in the one article, 2299 of the Code of 1825, which became article 2320 in the revision of 1870, viz.:

"Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.

"Teachers and artisans are answerable for the damage caused by their scholars [meaning pupils] or apprentices, while under their superintendence.

"In the above cases, responsibility only attaches, when the masters or employers, teachers and artisans, might have prevented the act which caused the damage, and have not done it."

It appears, therefore, that the reason why only masters or employers and teachers and artisans—but not parents—were included in the paragraph exempting them from responsibility when they could not have prevented the act that caused the damage, is that only masters or employers, teachers and artisans—but not parents—were mentioned in the article to which the last paragraph makes this exception. It is quite likely that, if, in the arrangement in the Louisiana Code, of the provisions of article 1384 of the French Code, the responsibility of parents for the acts of their minor children had been provided for in the same article that deals with masters and servants, instructors and pupils, and artisans and apprentices, as it was in the Digest of 1808, parents would have been exempted from liability, just as they and instructors and artisans were exempted by the proviso in article 1384 of the French Code, and just as parents and masters or principals were exempted by the proviso in the Digest of 1808, when they could not have prevented the act that caused the damage.

The reason why the writers of the French Code omitted masters or employers from the proviso exempting parents and instructors and artisans from liability for damages done by their minor children or pupils or apprentices, as the case might be, when the parents or instructors or artisans could not have prevented the act that caused the damage, is that the doctrine of respondeat superior is applicable to the master or employer only when the servant or employee is acting within the scope of his employment. It was explained in the early jurisprudence on this subject that that rule was a sufficient limitation or regulation of the liability of employers for the acts of their employees, and, hence, that it was a mistake to include masters or employers in the *proviso* in the Digest of 1808, exempting also parents, but not instructors or artisans, from liability when they could not have prevented the act that caused the damage; and that it was a mistake to include masters or employers in the *proviso* in the Civil Code of Louisiana, exempting also instructors and artisans, but not parents, from liability when they could not have prevented the act that caused the damage. In the following cases it

was held that, in a suit founded upon the doctrine of respondeat superior, the plaintiff did not disclose a cause or right of action unless he alleged that the defendant, employer, could have prevented the act of the employee which caused the damage and failed to prevent it, viz.: Palfrey v. Kerr, 8 Mart. (N. S.) 503, in 1830; Strawbridge v. Turner & Woodruff, 8 La. 537; Id., 9 La. 213, in 1836; Burke v. Clarke, 11 La. 206, in 1837; Ware v. Barataria & Lafourche Canal Co., 15 La. 169, 35 Am. Dec. 189, in 1840; and Duncan v. Hawks, 18 La. 548, in 1841.

But, in Ware v. Barataria & Lafourche Canal Co., supra, it was pointed out that the substituting of "masters and servants" for parents, in the *proviso* in article 2299 (now 2320) of the Civil Code, was an unfortunate departure from the text of article 1384 of the French Code, and that the effect of its enforcement would be to do away with the responsibility of employers for damages caused by the wrongful acts of their employees, in almost every instance, and in fact in every instance where the employer was a corporation. In that case it was said:

"It is said that in most cases, the restriction in the code will do away entirely with every thing like responsibility in the master or employer, for it will seldom happen that the latter can prevent the act which causes the damage. * * * *This restriction to the liability of masters and principals was an unfortunate and unadvised departure from the Napoleon Code*, from which most of the enactments of our laws on this subject have been taken almost verbatim. *In that work, the restriction which exists in favor of fathers, teachers, &c., does not extend to mas-*

*ters or principals*. The reason given for this distinction is, that servants and agents, when in the discharge of their duties, are supposed to be acting under the authority of their masters and principals; and that the latter should be attentive to employ none but good servants and agents, while the restricted liability of fathers, teachers, &c., has only for its object to secure from them a proper degree of watchfulness over the conduct of the persons entrusted to their care." (The italics are ours.)

The next case in which the defendant invoked the *proviso* in the concluding paragraph of article 2299 (now 2320) of the Civil Code, exempting the employer from liability for damages caused by an act of his employee when the employer could not have prevented the act, was Hart v. New Orleans & Carrollton Railroad Co., 1 Rob. 178, 36 Am. Dec. 689, in December, 1841; and then the court, observing again the anomalous consequence that would result from an enforcement of the change that was made in the transcribing of the last paragraph of article 1384 of the French Code, emphatically refused to give effect to the apparent change in the law. The court said:

"If the law were such as is alleged, a master or employer could never be made responsible for the acts of his agents or servants, unless he were present and did not endeavor to prevent the act which caused the damage."

Ever since that decision was rendered, the court has steadfastly refused to give effect to the *proviso* in the last paragraph of article 2320 of the Civil Code, purporting to exempt the employer from liability for damages

caused by an act of his employee if the employer could not have prevented the act that caused the damage. In McCubbin v. Hastings, 27 La. Ann. 716, in 1875, the court refused to apply the exemption where the defendant, employer, was an individual. In Nelson v. Crescent City Railroad Co., 49 La. Ann. 491, 21 So. 635, in 1897, it was said that the exemption was utterly inapplicable where the defendant, employer, was a corporation; and, in Anderson v. Elder, 105 La. 672, 30 So. 120, 122, the court, citing the Nelson Case, said: "We have found no good reason to limit the construction as applying only in so far as corporations are concerned." In Evans v. Louisiana Lumber Co., 111 La. 542, 35 So. 736, in 1903, on rehearing, the court again said that, according to the jurisprudence, the change that was made in adopting article 1384 of the French Code was without effect in so far as the liability of the employer for damages caused by the acts of his employee were concerned. And in Weaver v. W. L. Goulden Logging Co., 116 La. 473, 40 So. 798, 800, in 1906, after reviewing the decisions on the subject, the court said: "It therefore may be said that the restriction on the liability of masters embodied in article 2320 (2299) of the Civil Code has been construed out of the text, for the reason that it practically nullifies the liability of the master for the acts of his servants as imposed by the express terms of the same article."

This review of the jurisprudence on the subject, therefore, shows that the change which was made in adopting article 1384 of the French Code, as articles 2317 (2296), 2318 (2297) and 2320 (2299) of the Louisiana Code,

was not as effective as it was first thought to be.

It is true that in France the parents are not liable for damages for a tort committed by their minor child unless the parents could have prevented the act that caused the damage and failed to prevent it; whereas, in Louisiana there is no such restriction on the liability of parents for torts committed by their minor children. But that has nothing to do with the question of liability without fault or negligence of the parents for damages resulting from an act of an infant too young to be deemed guilty of an offense or a quasi offense. It means merely that, in Louisiana, though not in France, the liability of the parents for damages for a tort committed by their minor child does not depend upon whether the parents could have prevented the act that caused the damage.

It is because of this provision in the French Code, which exempts the parents from liability for torts committed by their minor children where the parents could not have prevented the act which caused the damage, that some of the French commentators, particularly Laurent (vol. 20, p. 594) and Marcade (vol. 5, p. 287), say that the responsibility which article 1384 of the French Code imposes upon the parents of minor children does not depend upon the age of the child, or upon the child's being old enough to be guilty of an offense or a quasi offense. In other words, as the parents are not liable at all, under the French law, for damages resulting from an offense or a quasi offense committed by their minor child unless the parents themselves are at fault for failing or neglecting to prevent the act which

caused the damage and which they could have prevented, the age of the child is a matter of no importance. Laurent, vol. 20, p. 594, commenting upon the responsibility imposed by article 1384 of the French Code, says:

"It applies only to damages caused by minor children. There is no distinction as to the age of the children, even when the act is not imputable to them. Two children are playing in the street; they pursue each other, and a stone thrown by the one strikes the other in the right eye. The mother was condemned to pay 600 francs damages. It would be of no avail to urge, as an excuse, the tender age of the child who caused the damage; the pretended excuse constitutes, in reality, the fault of the parents; it is precisely because children, left without surveillance, can easily cause damage by hurting one another, that it is necessary to watch over them. Parents are presumed at fault and responsible as such."

We must bear in mind, though, that the only ground, under the French law, on which the mother of the boy who threw the stone could have been held liable for the damages was that she could have prevented the act of her boy and failed to prevent it. All of the facts of the case stated by Laurent, by way of illustration, are not given; but it is certain that the only theory, or finding of fact, on which the mother of the boy who threw the stone could have been held liable was that she was at fault for failing to prevent the act that caused the damage. Hence the age of the boy who threw the stone was a matter of no importance, except perhaps that the younger the boy the greater the blame on the mother for neglecting to stop his mischief.

Marcade, vol. 5, p. 287, also explains that, under the French law, the liability of parents for damages caused by their minor children is dependent upon there being fault or negligence on the part of the parents themselves for failing to prevent the act which caused the damage and which they could have prevented. Marcade says:

"The responsibility of which it [article 1384] treats exists, whatever Toullier has said of it (XI, 260, 270), without the necessity of distinguishing whether the act which has caused the damage is or is not imputable to its author. Thus, when the father, instead of watching over his child of six or seven years, and guarding him under his eyes, allows him to run in the fields, and this child goes off with other children of his age and ravages crops or commits other devastations, it is very true that there is no fault and consequently no offense or quasi offense *on the part of the child*, who did not have the understanding of what he was doing, but it is obviously the father's fault that the damage has occurred. And consequently it is a quasi-offense on his part."

Toullier, whose observations have been criticized by Laurent and Marcade and others, declared (vol. 11, §§ 260, 261, 262, 263, 270, and 271) that, according to the jurisprudence in France before the limitation was put upon the responsibility of parents for the acts of their minor children, by the enactment of the last paragraph of article 1384 of the French Code, the parents were not liable for the acts of children too young to be guilty of an offense or a quasi offense; and he declared that the new limitation which the Legislature had

put upon the responsibility of parents in that respect 'had not done away with but had merely enlarged the previous limitation. Here is what Toullier said:

"260. The jurisprudence contained no other modification than to relieve the father of responsibility when the damage had been caused by a young child yet incapable of malice and without discernment of right and wrong, because their acts, the same as those of an insane person, not being susceptible of imputation, and being incapable of constituting an offense or quasi-offense, the damage which they cause, which it was impossible for the persons charged with watching over them to prevent, can be considered only as the result of a fortuitous event."

"261. But this modification left in force the unlimited responsibility for damage caused by children above the age of discretion, the injustice of which was obvious.

"Finally, our learned legislators have put an end to this injustice and restored the rule of reason, by the last provision of the article 1384, which declares:

"'In the above cases, the responsibility attaches unless the fathers and mothers, teachers and artisans show that it was not possible for them to prevent the act which gives rise to this responsibility.'

"By virtue of this provision, so long since besought by reason, the responsibility of the father is no longer a thing contrary to justice; nature has placed the children under the surveillance and direction of the father; he is the natural censor of their conduct; he must guide them; it is just then that he should answer for them; it is a guaranty

which he owes to society; that is the rule. * * * "

"262. But there is another rule, equally based on reason; it is that no one is held to the impossible. We cannot impute to any one his failure to do a thing which was not within his power; it is an axiom of eternal truth."

"263. Besides, this excuse should not be accepted if the impossibility to prevent the act was preceded by a fault of the father, without which the event which caused the damage could not have happened. There is an example in the particular case of a decision of the Parliament of Paris of the month of March, 1784, of which here is the particular case:

"The son of Carlier, a gunsmith, at Guise, and the daughter of Taffin, a tailor, both children of seven or eight years, were playing in the shop of the father, Carlier, who was absent. The Carlier child opens a drawer, takes therefrom a pistol loaded with powder, pulls the trigger, the pistol goes off and wounds the Taffin child about the face. Taffin made complaint against the father, Carlier, and his son. The criminal lieutenant rendered a decree of personal responsibility against the Carlier child.

"It was obvious that the act of the latter, of such a tender age, would not constitute an offense and could not be imputed to him: also, on appeal from the proceedings, the decree was declared null.

"It was obvious also that Carlier, the father, being absent, could not have prevented the act of the child; but, it was nevertheless obvious that Carlier, the father, had committed a fault, at least a great imprudence, in

leaving a loaded pistol where children would go to play, instead of locking it up. He was therefore condemned to pay 600 francs damages and costs. Moreover, the decision held him to account for keeping loaded firearms in his shop, and, for having done that, condemned him to pay a fine (3') by way of the police-court. (It is by this decision that Mr. Serasseur, who reports it, undertakes to show that the old jurisprudence on the point of non-responsibility for acts committed by infants of tender age was not constant. It is obvious that he is mistaken.)

"This decision confirms what we have already said, that the father should answer for the fault of his children, even of tender age, and although he could not have prevented the act, whenever it was preceded by a fault on his part, without which the event would not have happened, for it is then his personal fault which has occasioned the damage. * * *"

"270. We have said (No. 260) that the old jurisprudence relieved the father of responsibility when the child of tender years acted without discernment, because the act is not then imputable to the child. This principle, emanating from the eternal and unchanging law founded upon reason, is always the same; it has been consecrated by the article 66 of the Code Penal, which allows the judges great latitude in being able to decide whether the child has or has not acted with discernment. It declares: 'When the child is less than sixteen years of age, if it is found that he acted without discernment, he shall be acquitted.' The law, says the Court of Cassation, *does not consider him guilty of crime or offense*, because the act is not imputable to him. We must add, as does Pothier, No. 118, nor of a quasi-offense, because the act is not imputable to him; he is therefore not obligated; the damage is considered as a fortuitous event.

"In order to be relieved of responsibility, the father therefore, in such a case, has to prove nothing else but that his child was of too tender an age to act with discernment. * * *"

"271. This gives rise to an important observation. The responsibility of the father, obliged to repair the damage caused by his child, is nothing other than a legal and forced warranty, a guaranty that the law exacts in order to make him more attentive to watching over the conduct and actions of his children. The child who has caused the damage remains nevertheless personally obliged to make reparation. It is the principal obligation; that of the father is the accessory. If he is obliged to pay, it is the debt of the child that he is constrained to pay in advance and without benefit of discussion. * * *"

In the case of Mullins v. Blaise, 37 La. Ann. 92, Toullier's opinion, that the father, in order to avoid liability in a case like this, "has to prove nothing else but that his child was of too tender an age to act with discernment," was characterized as "the exploded vagary of Toullier." But the fact is that the difference of opinion on this subject, between Toullier and his critics, is not in the result but in the method of their reasoning. In Mullins v. Blaise, the defendant was held liable in damages for an injury inflicted on the plaintiff's little girl, by the defendant's six year old boy, by shooting her in the eye with a Roman candle. The Blaise children, in the presence of their mother, were celebrating Christmas

night, by shooting Roman candles from the front balcony of their residence. A number of children had congregated in the street in front of the house to see the sport. The six year old Blaise child deliberately shot his Roman candle downward, in the direction of the children in the street, and the ball of fire struck the Mullins child in the eye, injuring her seriously. The opinion rendered in the case shows that the reason why Blaise was held liable for the injury inflicted by his child was, not because the child was at fault, but because the parents were at fault in allowing their children of "tender years and lack of discernment" to engage in a dangerous sport. Justice Fenner, for the court, said:

"The act was a fault of the most culpable character. It is true that by reason of the tender years and lack of discernment of the minor, this fault may not be, in a legal sense, imputable to him. But the exploded vagary of Toullier that this is a reason for exempting the father from liability can find no recognition at our hands. The law itself imputes the fault to the father. It presumes that it resulted from lack of sufficient care, watchfulness and discipline on his part, in the exercise of the paternal authority. This is the very reason and foundation of the rule.

"For like reason the law imposes responsibility upon the owner for damage occasioned by his animals, who have certainly no greater powers of discernment than the infant of tender years."

The comparison of the "lack of discernment" of a child of tender years with that of an irrational animal demonstrates that the parents should not be held liable without some fault or imprudence on their part for the misdeeds of their children of tender years and "lack of discernment." In article 2321 of the Civil Code it is, unqualifiedly, declared: "The owner of an animal is answerable for the damage he has caused." But the courts have, consistently, construed this article as meaning that the owner of an animal is answerable for the damage he has caused, *only when the act of the animal that caused the damage is attributable to some fault or imprudence on the part of the owner of the animal.* For example, in Shawhan v. Clarke, 24 La. Ann. 390, it was held that Clarke was not responsible for the running away of his horse with his buggy and the running into and killing of Shawhan's horse, because Clarke's horse was a gentle animal, and Clarke had tied him to a tree and was not guilty of any negligence or imprudence in his ownership or management of the horse. On the other hand, in Vredenburg v. Behan et al., 33 La. Ann. 627, the owners of a bear, which was known to be ferocious, were held liable for their negligence in allowing the bear to roam at large on their premises, where it attacked and killed the plaintiff's husband. And in each of the following cases the owner of a horse and buggy was held liable for damages caused by the running away of his horse, because, through negligence, the horse was left unattended, viz.: Zambelli v. F. Johnson & Son Co., 115 La. 483, 39 So. 501; Damonte v. Patton, 118 La. 530, 43 So. 153, 8 L. R. A. (N. S.) 209, 118 Am. St. Rep. 384, 10 Ann. Cas. 862; Trenchard v. New Orleans Ry. & Light Co., 123 La. 36, 48 So. 575. In Martinez v. Bernhard, 106 La. 368, 30 So. 901, 55 L. R. A. 671, 87 Am. St. Rep. 306, it was held that the defendant was not liable for damages to one who was bitten by the defendant's dog, because the dog was

a gentle animal and had never bitten any one theretofore. But, in the following cases, the owners of dogs were held liable for injuries inflicted by their dogs, which they knew to be ferocious, and which they neglected to keep confined, viz.: Montgomery v. Koester, 35 La. Ann. 1091, 48 Am. Rep. 253; McGuire v. Ringrose, 41 La. Ann. 1029, 6 So. 895; Delisle v. Bourriague, 105 La. 77, 29 So. 731, 54 L. R. A. 420; Bentz v. Page, 115 La. 560, 39 So. 599; Serio v. American Brewing Co., 141 La. 290, 74 So. 998, L. R. A. 1917E, 516.

A reference to the collection of decisions on this subject in the editorial note to Vaughan v. Miller Brothers "101" Ranch Wild West Show, 69 A. L. R. 497 et seq., will disclose that, notwithstanding the unqualified terms in which article 2321 of the Civil Code declares that the owner of an animal is answerable for the damage he has caused, the rule of reason which the jurisprudence has established on the subject is exactly the same in Louisiana as at common law; that is, that there is no liability unless the owner of the animal was imprudent, or at fault.

In Mullins v. Blaise, the court cited with approval Marionneaux v. Brugier, 35 La. Ann. 13. In that case, Brugier's son, who was thirteen years of age and hence legally capable of committing an offense or a quasi offense, was shooting a gun, loaded with powder and a wad, in a public street in New Orleans, in company with a crowd of boys celebrating New Year's Day; and the Brugier boy, either intentionally or negligently, shot the nine year old Marionneaux boy in the face and eyes. The father of the Brugier boy was condemned to pay $1,000 damages for the injury done to the Marionneaux boy; but the reason given

by the court for holding the father liable was that his son had committed an offense, or at least a quasi offense, viz.:

"However we may view the evidence, it is certain that the shooting was either intentional or the result of culpable or inexcusable carelessness on the part of the defendant's son. * * *

"For injuries resulting from such acts, intentional or careless on the part of a child, the parent must respond. C. C. 2318."

We must bear in mind that the liability of the father for injuries committed by his minor child is not an attribute of paternity, or a necessary consequence of the relation of father and child, but is the consequence of the paternal authority. It is virtually so said in article 2318 of the Civil Code, the second paragraph of which provides: "The same responsibility attaches to the tutors of minors." And, in Coats v. Roberts, 35 La. Ann. 891, it was held that the defendant was not liable in damages for an act of negligence on the part of his minor son while serving as a member of a posse comitatus, under orders of the sheriff, because the son was not then under the paternal authority. The court said:

"Paternal responsibility is the consequence and offspring of the paternal authority. Whenever the law terminates or interrupts the latter, the former is, at the same time, terminated or interrupted."

In Miller v. Meche, 111 La. 143, 35 So. 491, it was decided that Meche was not liable for damages for a physical injury done to Miller by the minor son of Meche, by shooting Miller with intent to kill him; notwith-

standing young Meche had been convicted of the crime and was then serving a sentence of imprisonment in the penitentiary; the reason for the decision in the civil suit being that from the evidence adduced in that case it appeared that young Meche was not the aggressor in the personal difficulty, but shot Miller in self-defense. We quote from the syllabus:

"While the father may be liable for the wrongful act of his minor son under article 2318 of the Civil Code, it must be shown, in order to render him liable, that the one who had a difficulty with the son was not himself at fault in the trouble which resulted injuriously to the claimant for damages."

Under that doctrine it would be unjust to allow the nurse of an infant, three years of age, a right of action for damages for a physical injury willfully inflicted upon the nurse by the child, because the child would not be capable of testifying, or of defending himself or herself, although in fact the nurse might have been at fault, as, for example, by provoking the act which caused the injury.

The plaintiff in this case cites and quotes from Sutton v. Champagne et al., 141 La. 469, 75 So. 209; but, in that case, the two boys, whose parents were held liable for damages for the boys' misdeeds, were fourteen years of age, and hence capable of committing an offense or a quasi offense. The case, therefore, merely exemplifies that the parents of minor children who are old enough to be capable of committing an offense or a quasi offense are liable for damages for their offenses or quasi offenses. That proposition has nothing to do with this case. The converse of the proposition, however, which is appropriate here, is stated in Toca v. Rojas, 152 La. 317, 93 So. 108, 111, where the court announced the rule that under article 2315 of the Civil Code there is no liability without *fault* on the part of some one, and said:

"The rule applies with equal force when the father is sought to be held liable for the act of his minor child. While the law imputes the fault of the minor to the father, there must of necessity be some fault, actual or legal, in the act of the minor which caused the damage, before the father can be held liable in damages. Fathers and mothers are only made answerable for the offenses and quasi offenses committed by their children (C. C. 237), from which it follows that, if the act of the minor which caused the damage did not in law constitute an offense or quasi offense, there can be no paternal responsibility."

Article 237 of the Civil Code is in the chapter dealing with *paternal authority*, and provides: "Fathers and mothers are answerable for the offences or quasi-offences committed by their children, in the cases prescribed under the title: *Of Quasi-Contracts, and of Offences and Quasi-Offences*." All of which shows that there is no liability on the part of the parents for an injury done to a third person by their minor child unless the injury was the result of an offense or a quasi offense on the part of the child, or negligence or imprudence on the part of the parent.

At common law, of course, a general demurrer to a suit like this would be sustained, because the common-law rule is that paternal authority does not of itself make the father liable for a tort committed by his minor child.

At common law there is no liability on the part of the parent for a tort committed by his minor child unless the parent authorized or ratified the act of the child, or was also guilty of negligence, or at fault. See the cases listed in the editorial note to Johnson v. Glidden, 74 Am. St. Rep. 795; note to Broadstreet v. Hall, 10 L. R. A. (N. S.) 933; note to Hopkins v. Droppers, 36 A. L. R. 1156; 46 C. J. 1329, §§ 169–171; 20 R. C. L. 627, § 33.

In France, as we have said, the parental authority itself makes the parent responsible for a tort committed by his minor child, unless the parent proves that he was unable to prevent the act that caused the damage. Because of that limitation on the responsibility of the parent for an injury done by his minor child, the age of the child is a matter of no importance in such a case. But, in Louisiana, the parent is responsible for a tort committed by his minor child, even though the parent could not have prevented the act that caused the injury. Because of that unqualified responsibility of the parent for a tort committed by his minor child, in Louisiana, the liability of the parent for an injury willfully inflicted by his minor child depends upon whether the child is old enough to be legally capable of committing a tort.

■ Our conclusion is that, because of the plaintiff's failure to allege that the defendant's child was afflicted with a dangerous disposition and that the defendant knew of the danger and failed to warn the plaintiff, she has failed to set forth a cause of action.

It is argued, alternatively, for the defendant that, if the parents of a child of tender years must anticipate and guard against the child's biting some one, so should the child's nurse, by accepting the employment, assume the risk. In furtherance of the argument, it is pointed out that, by the terms of article 2318 of the Civil Code, if the parents of a minor child whom they have placed "under the care of other persons" are condemned to pay damages for an offense or a quasi offense committed by the child, the parents shall have "recourse against those persons." Hence it is argued that the claim which the nurse sets up against the child's father in this case is barred by his recourse against her. We doubt that this provision in article 2318 of the Civil Code is applicable to the employing of a nurse to attend a child in the parents' home. Having concluded, however, that the father is not liable in this case, for the reasons which we have given, we find it unnecessary to express an opinion on this alternative defense.

The judgment of the Court of Appeal is set aside, and the judgment of the district court is reinstated and affirmed, and, accordingly, the plaintiff's suit is dismissed at her cost.