No. 4178

Second Circuit

(Second Division)

___

BRIDWELL v. BUTLER

___

(January 14, 1932. Opinion and Decree.)
(February 16, 1932. Rehearing Refused.)

___

676

Goff & Goff, of Arcadia, attorneys for plaintiff, appellant.

Seals & Atkins and W. F. M. Meadors, of Homer, and Wilkinson, Lewis, Wilkinson & Burford, of Shreveport, attorneys for defendant, appellee.

STEPHENS, J. The plaintiff, David J. Bridwell, brings this suit for the use and benefit of his six-year-old son, Ross Bridwell, to recover $32,612.10 as damages for injury alleged to have been sustained by his said son as a result of an automobile accident. It is alleged that the accident and injury was caused solely by the fault and negligence of the defendant, Lee Butler.

The defendant answered averring that the accident was caused through no negligence on his part but resulted from the gross carelessness, recklessness and unskilful driving of one J. M. Glover, the agent and servant of plaintiff; and that said negligence is imputable to the minor Ross Bridwell and his father, the plaintiff. In the alternative the defendant pleads contributory negligence by Glover, and that Glover's contributory negligence should be imputed to the plaintiff and his minor son.

The trial judge rejected plaintiff's demands, from which judgment plaintiff prosecutes this appeal.

The accident from which this cause of action arose occurred at the intersection of the Homer-Arcadia highway and the Athens-Cross Roads road in the village of Athens, Louisiana. The latter road as it enters the corporate limits of the village becomes its main street. The Homer-Arcadia highway, which we shall hereinafter refer to as the highway, runs approximately north and south. It is intersected by the Athens-Cross Roads road, which we shall hereinafter refer to as the road, at right angles; the road running approximately east and west. Both the highway and the road are gravelled and at the point of intersection are approximately the same width. There is a slight downward grade from north to south on the highway at the scene of the accident. In the northwest corner of the intersection there is a filling station operated by Jim Dance. In the northeast corner there was at the time of the accident a cornfield with tall cornstalks growing in it very close to both of the roads, which obstructed the view of persons approaching the intersection from the north of the traffic approaching from the east, and vice versa.

On the day of the accident, May 26, 1930, J. M. Glover, a negro boy about 17 years of age, acting under the instructions of plaintiff, attempted to drive a Ford two-door sedan from plaintiff's residence to the village of Athens. The six-year-old son of plaintiff was on the back seat of the automobile without the consent, so far as the record discloses, of his father or mother. Glover drove from east to west. As he approached the intersection, his view of traffic which might have been approaching on the highway from the north was

obstructed, but this did not deter him. He drove into the intersection at a rate of speed which the district judge estimated to be between 30 and 35 miles per hour.

The defendant, Lee Butler, and three friends were traveling south on the highway in a Master Six Buick four-door sedan. They were going from Homer, Louisiana, to Cane River Lake in Natchitoches parish, Louisiana, for the purpose of fishing. The defendant was driving, and as he approached the intersection his view was likewise obstructed by the corn, in so far as traffic approaching from the east was concerned. Before entering the village, he had been maintaining a speed of 40 to 45 miles per hour, but after entering the village and on approaching the scene of the accident, he and his companions testified that he had reduced his speed by half. The district judge found that his speed on reaching the intersection was about 20 miles per hour.

If the side lines of both roads be projected across each other, and the resulting square be divided into quarters, the collision occurred in the southwest quarter of the intersection. We agree with the trial judge that both automobiles entered the intersection about the same time. The defendant became aware of the presence of plaintiff's automobile when his own was about 15 feet from the intersection. He immediately applied his brakes, and his Buick automobile, turning slightly to the right, skidded a distance of 41 feet, as indicated by skid marks in the gravel, to the point of contact.

The attention of the driver of the Ford was first attracted to the Buick by the noise made by the application of its brakes. He swerved the Ford automobile to the left and it continued to the point of contact with undiminished speed. After the collision the automobiles moved together side by side down the highway, in the direction in which the Buick was originally traveling until they came to rest some 50 feet from the point of contact, with the Buick in the ditch and the Ford nearby on the highway.

Much evidence was adduced by plaintiff in an effort to show that the Buick struck the Ford. An equally determined effort was made by the defendant to establish that the Ford struck the Buick. It is conclusively shown, we think, that the collision did not occur in the manner suggested by either plaintiff or defendant. All of the damage to the Buick was on its left side and all of the damage to the Ford was on its right side. There was no damage to the front of either. After entering the intersection, the Buick turned slightly to the right and the Ford decidedly to the left. The courses as thus taken, if projected forward, would form an acute angle. They reached the vertex of that angle at the same time and side-swiped each other.

The learned trial judge found in his able written opinion that both automobiles reached the intersection at about the same time; that the Ford was being driven at the rate of 30 or 35 miles per hour and at no time was its speed reduced before the impact; that the Buick approached the intersection at the rate of about 20 miles per hour; that the driver of the Buick saw the Ford before it entered the intersection and immediately applied his brakes, which were in good working order; that the collision occurred in the southwest quarter of the intersection; that the driver of the Ford was grossly negligent in turning to the left instead of maintaining his side of the road, which he could have done and avoided the accident; and that the defendant was free from fault.

It must be conceded that there was but a slight difference in the distance traveled by each automobile after entering the intersection. If both entered the intersection at the same time, and the Ford moved through the intersection to the point of contact without restraint at a speed of 30 to 35 miles per hour (and these facts are amply supported by the record) and the Buick with brakes set traveled through the intersection approximately the same distance to the same point and necessarily reached it at the same time, it must further be conceded that the Buick entered the intersection at a higher rate of speed than the Ford.

We have concluded that the district judge was in error in estimating the speed of the Buick at 20 miles per hour.

On this question, Mrs. Jordan, witness for plaintiff, testified that she saw the Ford entering the intersection at a speed of about 30 miles per hour; that she did not see the Buick but heard it coming, its motor sounding like an aeroplane motor, but not as loud; and that she closed her eyes in order to avoid seeing the collision.

Jim Dance testified that he was sitting on a box in front of the filling station above referred to at the time the accident occurred. He estimated the speed of the Buick on entering the intersection, at about 60 miles per hour, and at the moment of impact, at about 25 miles per hour; that he measured the deep impressions in the gravel made by the brake-locked wheels of the Buick and that from the point where the brakes were applied to the point of contact of the automobiles was 41 feet.

Jim Dance further testified that a Buick of the type here involved, if the brakes were in good working order, could be stopped if moving at 30 miles an hour in 40 feet. He was corroborated in this particular by the testimony of J. E. Curry and W. F. Jones.

Aub Atkins, village marshal of Athens, corroborated the testimony of Jim Dance, J. E. Curry and W. F. Jones that a Buick could be stopped in 40 feet if traveling 30 miles per hour, and further testified that shortly after the accident he stepped the length of the skid marks made by the Buick's brake-locked wheels and that he found their length to be about 40 feet.

There is no evidence in the record that the Buick was traveling at a low rate of speed except that of the defendant and his three companions who were in the automobile with him at the time of the collision. They all testified that after entering the village the defendant reduced his speed by half; that before entering the village the defendant had been driving at an estimated speed of 40 to 45 miles per hour.

None of them looked at the speedometer either before or after entering the village. It is a matter of common observation and knowledge that if a person travels for some time at a high rate of speed and that speed is suddenly reduced, the actual reduction may be little, but seems great. These witnesses no doubt made their estimates of the Buick's speed in good faith, but in our opinion every established fact and circumstance in the case show that they were in error; and that the Buick on entering the intersection was traveling at a high rate of speed.

If the defendant drove into the intersection at a greater rate of speed than 15 miles per hour it was in violation of the speed limit fixed by section 5, sub-section b, subd. 3, title II, of Act No. 296 of 1928, which reads as follows:

"3. Fifteen miles an hour when approaching within fifty feet and in traversing an intersection of highways when the driver's view obstructed. A driver's view shall be deemed to be obstructed when at any time during the last fifty feet of his approach to intersection, he does not have a clear and uninterrupted view of such intersection and of the traffic upon all of the highways entering such intersection for a distance of two hundred feet from such intersection."

At a distance of 50 feet from the intersection the defendant could not see traffic approaching from the east a distance of 200 feet or more than a few feet. He was governed by the limitation fixed by the statute and his failure to observe it was negligence, which negligence, with the clearly concurring negligence of the driver of plaintiff's car, in our opinion, was the proximate cause of the accident.

Under the jurisprudence of this state, contributory negligence cannot be imputed to a child six years old, nor can the contributory negligence of the employee of the father be imputed to the father for the purpose of barring recovery by him for the benefit of the child which has sustained the injury.

"The negligence or want of care on the part of parents or guardians of a child of tender years cannot be imputed to the child to prevent recovery for injury to the child." Williams v. Mo. Pac. R. Co., 155 La. 349, 99 So. 286; Westerfield v. Levis, 43 La. Ann. 63, 9 So. 52; Barnes v. Shreveport City R. Co., 47 La. Ann. 1223, 17 So. 782, 49 Am. St. Rep. 400; Rice v. Crescent City R. Co., 51 La. Ann. 113, 24 So. 791; Buechner v. City of New Orleans, 112 La. 599, 36 So. 603, 66 L. R. A. 334, 104 Am. St. Rep. 455; Danna v. City of Monroe, 129 La. 138, 55 So. 741.

As a result of the collision, the child was thrown forward from the back seat of the Ford automobile and his head and body wedged between its front seat and side. He was removed from the automobile in an unconscious condition. A semiconscious condition existed for several days after the accident. Both eyes were discolored and swollen. An x-ray examination disclosed a long lineal fracture of the left frontal bone, extending from a point at the left nasal margin upward and backward for about three inches. Shortly after the accident, he developed a nervous condition, accompanied by nausea, vomiting, frequent headaches and light sensitiveness to both eyes. His head was slightly drawn to one side. These symptoms continued up to the time of the trial, some ten months after the accident, and are aggravated by exercise and heat, and are indicative of intracranial pressure which has resulted, it is believed, from the fractured skull. The left eye was still discolored at the time of the trial. The left upper eyelid droops slightly. This latter condition is considered permanent. Recovery from the indicated intracranial pressure is problematical. There may be a recovery, and it may result in epilepsy.

We estimate the damages which the plaintiff should recover at the sum of $3,500.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of plaintiff for the use and benefit of his minor son, Ross Bridwell, and against the defendant in the sum of $3,500.

---

PER CURIAM. Through oversight, we omitted from our decree in this case to allow plaintiff interest on the amount awarded as damages, and costs of court. The decree is now amended, corrected, and rewritten so as to read as follows:

It is ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed; and that there now be judgment in favor of the plaintiff, for the use and benefit of his minor son, Ross Bridwell, and against the defendant, Lee Butler, in the sum of $3,500, with 5 per cent per annum interest thereon from judicial demand until paid, and all costs of this suit.