**BORMAN v. LAFARGUE et al.**

No. 1879.

Court of Appeal of Louisiana,
First Circuit.

Oct. 5, 1938.

Cline, Thompson, Lawes & Cavanaugh, of Lake Charles, for appellants.

Chas. C. Jaubert, of Lake Charles, for appellee.

OTT, Judge.

On August 24, 1937, about 6:30 P. M., on the Old Spanish Trail Highway, U. S. 90, some four miles west of Lake Charles, Mary Sarah Roach, a child about seven years of age, was struck by an automobile driven by the defendant, Lafargue, while on a mission for his employer, W. Horace Williams Company, Inc. The little girl was severely injured, suffering a fracture of the femur bones of both legs, a fracture of the humerus of the right arm, a hemorrhage of the lung, laceration of the scalp, and minor abrasions and bruises about the body.

The suit is by the mother in her individual capacity for damages on account of medical expenses, for nursing the child, and for mental anguish and worry occasioned her by reason of the injury, and for damages suffered by the child on account of pain and suffering, permanent deformity and disfigurement, and loss of earning capacity suffered by the child, the total amount claimed being the sum of $30,500, of which amount $5,500 is claimed by the mother in her individual capacity, and $25,000 for the child.

Judgment was rendered for the plaintiff in her individual capacity for the sum of $1,506, and as tutrix for the minor in the sum of $5,500. Defendants have appealed, and the plaintiff has answered the appeal and has asked that the judgment be amended by awarding the child $10,000.

The child and her mother were picked up by a Mr. Miller who was driving a car west on the above named highway. The mother and child lived on a gravel road leading into this main highway from the south some four miles west of Lake Charles, and the child and her mother were on their way home from Lake Charles when picked up by Mr. Miller. A grown son of the plaintiff was also picked up by Mr. Miller. The mother and the child sat on the front seat with Mr. Miller, and the son sat on the back seat of the car. When he reached a point opposite the intersecting gravel road from the south, Miller stopped his car on the right hand side of the highway, almost, if not completely, off the pavement for the purpose of permitting these passengers to alight and continue their journey home down this gravel road. The gravel road does not continue north across the highway but merely intersects it from the

south, and Miller stopped his car practically in the mouth of this intersection gravel road.

After the car stopped, the son got out of the back seat, opened the front door for his mother and sister to get out, and the child pulled loose from her mother's hand, stepped down on the ground on the north side of the car, hesitated a moment, and then started around the rear end of the parked car, evidently for the purpose of getting across the main highway to the gravel road leading to her home. She was struck by the car driven by Lafargue traveling in an easterly direction almost on the south edge of the pavement and several feet east of the intersecting side road.

Plaintiff charges that Lafargue was driving at an excessive rate of speed, was not keeping a proper lookout and did not have his car under proper control; that said Lafargue was not sufficiently careful in passing this parked car on the north side of the highway with a child alighting from it, and was not observant of the dangers in passing this side road, warning of which was posted some distance to the west. Defendants denied that Lafargue was guilty of any negligence, and aver that at the time of the accident Lafargue was driving east on said highway, and at the point where the gravel road intersects the highway, there was parked on the north side an automobile headed in a westerly direction; that another car was also approaching the intersection from the east and pulled slightly to its left in order to pass the parked car; that Lafargue decreased his speed to about thirty miles per hour and pulled his car well over to the right of the highway; that about the time the car driven by Lafargue and the car coming from the east in the opposite direction came abreast of the parked car on the north side of the highway, suddenly and without warning, the child dashed from behind the parked car into the path of the Lafargue car; that Lafargue applied his brakes, blew his horn, and pulled his car sharply to the right, almost off the pavement, but that the child continued across the highway in a southeasterly direction and ran into the left fender of the car; that the view of the child was screened from Lafargue by the parked car and by the car approaching from the east, and it was impossible to see the child until she darted out from behind these two cars.

In the alternative, defendants pleaded contributory negligence on the part of the child in attempting to cross the highway without first ascertaining that the crossing could be made in safety, and in dashing from her concealed position behind the car from which she had alighted onto the traveled portion of the road, and by so doing creating an emergency which resulted in her injuries. Further pleading in the alternative, defendants allege that the mother was guilty of contributory negligence barring her individual right of recovery in permitting the child to alight from the parked car without taking the necessary precautions to prevent the child from running across the highway which she knew to be frequently traveled.

An important factor in the case is whether or not there was a car coming west and passing Lafargue just previous to the time the child ran out from behind the parked car from which she alighted. The trial judge reached the conclusion that there was no such car going west and passing the parked car at the time that Lafargue approached and passed this parked car from the west. A review of the evidence on this point does not justify us in saying that the trial judge was in error in his finding of fact.

It is true that Lafargue and the two men in the car with him state that there was a car passed going west just before their car reached the point where the Miller car was parked on the north side of the highway; that this car came over slightly to the left of the center line in passing the parked car, necessitating Lafargue pulling his car over to the extreme right of the pavement, and that the child emerged suddenly from behind this parked car and the passing car, and when they first saw the child she was two or three feet over the black line going across the highway to the south; that she was then about 25 feet from them, and she continued to run across the highway in front of them; that Lafargue pulled his car further to the right, almost off the pavement, and struck the child near the south edge of the pavement, some thirty or forty feet east of the intersecting side road.

The owner of the parked car, Miller, was not asked if there was a car that passed him going west just before the child was struck, and he made no mention of such a car. His testimony was taken by deposi-

tion and was introduced by the defendants. Miller saw the approaching Lafargue car some fifty feet from the front end of his car, and it seems that, if there was another car passing him right at his left going west, he would have said something about it in his account of the occurrence, even though he was not specifically asked about that fact. His failure to mention such another passing car, indicates to us that he did not see any such car pass. Both Mrs. Borman and her son state that there was no car passed going west just previous to the accident.

Two men, Mr. Cohen and Mr. Deax, were in a car coming from the east and approaching the parked car from the rear. Both of these men saw the accident. Mr. Cohen, who was driving, says there was no car between his car and Lafargue traveling west and passing the parked car. In the first part of his testimony, Cohen says: "there wasn't a car within a mile of us." He was again asked on redirect examination if there was any other car between him and the Lafargue car besides the parked car, and he answered that there was not. On recross examination he was asked if he could state positively whether or not there was a car between the parked car and Lafargue's car, and he replied if there was, they did not stop, and he was sure there was not unless you call in front of the parked car 200 feet or 200 yards. In other words, he clearly means if there was such a car passed the Lafargue car going west it was 200 feet or 200 yards beyond the parked car in which case such a passing car would have nothing to do with the situation. Cohen states his meaning clearly and positively in the last question and answer as follows: "Q. From the time the Oldsmobile (the Miller car) parked until the child was struck, did you see any car pass the Oldsmobile going west. A. There was not."

Deax says there could have been another car going west that passed the parked car just before the accident, but he does not remember seeing such a car.

The child ran almost completely across the highway before being struck. She came from north of the pavement back of the parked car and ran diagonally across to a point almost off the pavement on the south some forty or fifty feet east of the intersecting road before she was struck. In other words, she ran more than eighteen feet after clearing the parked car before being struck. If she was going ten miles per hour (and she could hardly have been going that fast) and Lafargue was going thirty miles per hour as he says, the car traveled between fifty and sixty feet after the child came from behind the parked car.

It has been held that a Buick car going at the rate of 30 miles per hour can be stopped in 40 feet if the brakes are working properly. Bridwell v. Butler, 18 La. App. 675, 139 So. 51. Lafargue was driving a Ford V-8 with good brakes, and if he was going only thirty miles per hour, he should have been able to stop his car after the child came into his view. The day was clear and there was nothing to prevent him from seeing the child after it came from behind the parked car. Indeed, we see no reason why Lafargue could not have seen the child, her brother and mother getting out of this car standing on the shoulder of the road to his left as he approached. Common experience teaches that, as the driver of a car on a straight road approaches a parked car on his left, the driver can not only see the persons in the standing car, but can see the feet and parts of the body of those standing or walking on the ground around the car, at least to the extent of realizing that such persons are around the car. The evidence in this case shows that a twelve year old son of the plaintiff was standing near the front fender of the parked car on the right hand side as the child and her brother were alighting from it. This boy could have been seen, regardless of whether or not another car was passing.

Lafargue passed a side road sign 279 feet west of the intersection; he saw, or should have seen, this car parked on the shoulder of the road to his left with people alighting from the car in close proximity to the intersecting gravel road. While the situation was not such as to require him to stop, yet it was such as to put him on guard and cause him to use greater precautions by keeping a closer lookout, by slowing down his speed, and bringing his car under control.

The witness Miller says that Lafargue began putting on his brakes about 75 feet before he struck the child, and the car went about 70 feet further after striking the child. The two men in the car with Lafargue say that his car went 30 to 35 feet after striking the child. According to the men, Lafargue began to apply his

brakes just before reaching the side road. The child was struck on the south side of the highway between the side road and a mail box 106 feet east of the intersection. Therefore, Lafargue's car went across the intersecting road (which is 30 feet wide) and went an additional 40 or 50 feet toward the mail box while the brakes were being applied and before the child was struck. So the car went 75 feet or more after the brakes were applied before striking the child, and then went on 40 or 50 feet further and knocked down this mail box 106 feet east of the intersecting gravel road.

■ From the facts and physical evidence disclosed by the record, we find, as did the trial judge, that the accident was caused by the excessive speed at which Lafargue was driving, his lack of control of his car and his failure to see the child in time to prevent striking her.

In our opinion, the case does not come within that class of cases where the driver is suddenly and unexpectedly confronted with an emergency by a child darting out from behind a parked automobile or other obstruction into the path of the oncoming car, making it unavoidable on the part of the driver in striking the child. These cases assume that the driver is without fault and is driving his car at a proper speed, and is using ordinary care and prudence in driving. This class of cases is illustrated by the following: Martinez et al. v. Crusel, La.App., 148 So. 742; Millannos et al. v. Fatter, 18 La.App. 708, 138 So. 878; Sundbery et ux. v. Ber, La. App., 162 So. 85.

In our opinion, this case comes within that line of cases where the facts showed that the accident could have been avoided had the driver been traveling at a proper speed, keeping a proper lookout and having his car under proper control. This line of cases is illustrated by the following: Moreau v. So. Bell Tel. & Tel. Co., Inc., La.App., 158 So. 412; Cimo v. Karstendiek, La.App., 173 So. 548; Brown v. Wade, La. App., 145 So. 790; and Guillory v. Horecky et al., 185 La. 21, 168 So. 481.

■ That a child seven years of age cannot be guilty of contributory negligence is too well settled to require the citation of any authority. And on the question of the alleged contributory negligence of the mother, the trial court said:

"We do not find that the plaintiff was negligent. When she descended from the automobile she held the arm of her minor daughter, who suddenly pulled away from her, hesitated a moment, and then ran across the road. There was nothing that the mother could have done which would have prevented the accident."

We think the trial judge was correct in his finding on this point. The mother could hardly have anticipated that the child would thus pull away from her and run around the rear of the car, and, besides, she called to her son to catch the child when she saw the car coming from the west.

■■ The two doctors who treated the child fix their bill at $750. In view of the fact that they treated the child for some two months daily, and considering that the injury was a very serious one, involving the best skill and attention, we cannot say that this charge is excessive. The trial judge allowed a further sum of $250 for the estimated future medical treatment of the child. While the evidence does show that the child will probably have to have further medical treatment, there is not enough evidence in the record to support this estimate of $250, and we feel disposed to disallow this item.

■ There is a bill in the record from St. Patrick's Hospital for $218.50 to cover services rendered by the hospital to the child for sixty days; also a bill from Dr. McKinney for X-ray pictures made of the child amounting to $57.50. Objection was made to the introduction of these bills on the ground that they were not supported by proper proof. Plaintiff testified that these bills were rendered on account of services for her child, and there is other evidence in the record to show that the child was in the hospital for some sixty days, and X-ray pictures were made of the child. We think there is sufficient evidence to support an allowance of these two items.

■ The mother was allowed $180 for nursing the child for six months—180 days—at $1 per day. This item is reasonable and was properly allowed. This makes a total allowance to the mother in her individual capacity of $1,206, instead of $1,506, and the judgment will be amended accordingly.

The child was allowed $2,500 for pain and suffering and $3,000 for permanent

shortening of her leg and disfigurement of her body. The child suffered a great deal, and her life was despaired of for two weeks or so after the injury. It is shown that one of her legs is shorter than the other, causing her to limp when she walks. This condition could not be remedied without re-breaking and re-setting her limb, which the doctors do not advise. The child has an open sore on the back of her scalp, and a bad scar over the left knee resulting from a pin placed through her femur to bring it down to position. This scar sometimes opens and drains.

The child is subject to epileptic fits, having had two before the accident, and two or three since, but it is difficult to say if these fits have been aggravated by the injury. From the testimony of one of the doctors, she does not seem to be a very bright child. The trial judge made no allowance for loss of earning power on account of her mental condition. We think the prospects of her being able to earn a livelihood are too uncertain, even though she had not suffered the injury, to venture an allowance on that account. We think the award of $5,500 for the child does substantial justice, and we see no reason to increase the award.

For the reasons assigned, it is ordered that the judgment appealed from be amended by reducing the amount awarded the plaintiff, Mrs. Irene Borman, in her individual capacity from $1,506 to $1,206; that in all other respects the judgment be affirmed; cost of the appeal to be paid by the plaintiff, and all other costs to be borne by the defendants.