LOTTINGER, Judge.
This is a suit by Mrs. Katie Nell Wicker, individually and as administratrix of the estate of her minor daughter, Angela Lynette Wicker, for damages as the result of Angela having been hit and killed by an automobile. The defendants are Paul E. Sanders, owner and driver of the automobile which struck Angela Wicker, his insurer, Southern Farm Bureau Casualty Insurance Company, Amite Milling Company, Inc., the owner of the truck in which plaintiff and her minor daughter had been riding moments before the accident, and Leon Jackson, driver of the truck. The Trial Court rendered judgment in favor of Katie Nell Wicker and against Amite Milling Company, Inc. and Leon Jackson, even though plaintiff had not prayed for judgment against Jackson, and dismissed plaintiff’s suit against Paul E. Sanders and Southern Farm Bureau Casualty Insurance Company. From the judgment of the Trial Court, Leon Jackson and Amite Milling Company, Inc. filed a suspensive appeal, and plaintiff filed a devolutive appeal. Paul E. Sanders and Southern Farm Bureau Casualty Insurance Company answered the appeal of plaintiff.
Angela, who was five years old, was killed in St. Helena Parish on September 21, 1972, when struck while attempting to cross Louisiana highway 1045 from the south shoulder of that highway to the residence of Mr. Watson located on the north side of the highway. She was struck by the automobile owned and driven by Paul E. Sanders traveling on Highway 1045 in an easterly direction.
Shortly before the accident, Mrs. Wicker, Angela, and three other Wicker children left their home to walk to the Watson residence where another of the Wicker children was visiting. As they were walking, they were offered and accepted a ride with Leon Jackson who was driving a large feed truck belonging to Amite Milling Company, Inc. When they reached their destination Jackson pulled to his right onto the south shoulder of Highway 1045 immediately across from the Watson residence.
Sanders was traveling in the same direction that Jackson had been driving, that is from west to east. Three houses, including the Watson residence, were located on the north side of the highway or to Sanders’ left in the immediate vicinity of the accident, and children were playing outdoors around the houses. To the right or south of the highway there was an open field surrounded by a barbed wire fence. The feed truck, being operated by Jackson, was parked half on the paved portion of the highway and half on the shoulder. According to the testimony of Jackson, he had engaged the flashing emergency lights located on the rear of the truck.
Mrs. Wicker opened the door of the truck and descended holding one of her small children in her arms. She then assisted Angela from the truck, and according to her testimony, she reached back into the truck to assist another of her children. At this point, subsequent to Angela descending, Mrs. Wicker apparently heard an oncoming vehicle and looked back to the west to see the Sanders’ vehicle. She then looked for Angela who by this time had *1235 walked in front of the truck and onto the pavement. As the Sanders’ vehicle passed the truck in which Mrs. Wicker and her children had been riding, Angela attempted to run across the highway and was struck and killed by the Sanders’ vehicle.
Sanders testified that he first saw the stopped truck as he came over a small hill toward it. When he first saw it, he could not tell whether it was moving or stopped for only the top portion of the truck was visible to him. As he approached the vehicle more closely, he saw that the vehicle was stopped, and, according to his testimony, he noticed that there was a woman holding a small child in her arms at the right door of the truck talking to the driver. According to Sanders’ testimony, there was no indication that there were any children on the ground nearby or that there were any passengers in the truck. For all he knew, Mrs. Wicker might never have been a passenger in the truck and might simply have been visiting with the driver while holding the only child in the vicinity in her arms.
Sanders testified that he was driving at his usual speed which he estimated to be 50 to 55 miles per hour. He testified that as he approached the stopped truck, he did not attempt to apply his brakes but that he began coasting approximately 25 yards from the point of impact with Angela in order to slow so that he might get around the truck which was partially in his lane of traffic.
The Trial Judge has furnished us with no reasons for judgment and we do not know why he held Leon Jackson and Amite Milling Company, Inc. liable or why he dismissed the suit against Mr. Sanders and his insurer.
We first consider the appeal by defendants, Leon Jackson and Amite Milling Company, Inc. We have reviewed the record and are at a loss to find any negligence on the part of these defendants upon which the Trial Judge could base liability. Plaintiff’s brief is silent with regard to why the judgment of the Trial Court should be upheld against these defendants, and in oral argument, plaintiff admitted that Jackson and Amite Milling Company, Inc. should not be cast in judgment. Accordingly, we reverse the judgment of the Trial Court in favor of plaintiff and against Leon Jackson and Amite Milling Company, Inc.
We now come to plaintiff’s appeal of the judgment dismissing her suit against Paul E. Sanders and his insurer, Southern Farm Bureau Casualty Insurance Company. Plaintiff strongly argues that Sanders should have been put on notice to take special care because there were children in the area playing in the yards across the street, that he should have known that Mrs. Wicker and anyone with her would be crossing the road inasmuch as there was a fenced field on their side of the road, and that Sanders should have known that Mrs. Wicker was a passenger exiting from the truck and this should have put him on notice that there were other passengers exiting from the truck and getting ready to cross the road to get to the houses on the other side.
Plaintiff cites the case of Borman v. Lafargue, 183 So. 548 (La.App. 1st Cir. 1938) as being analogous to the case before us. In that case, a vehicle stopped on its right shoulder of the road, directly opposite an intersection to its left in order for passengers, including a seven year old child to exit. The child exited, got away from her mother, went around the rear of the vehicle in which she had been riding and onto the highway, and was hit on the far edge of the highway by defendant’s vehicle headed in the opposite direction from which the vehicle in which the child was riding had come. In Borman, the Court said that the accident was caused by the excessive speed at which Lafargue was driving, his lack of control of his car, and his failure to see the child in time to prevent striking her. The Court said that the case did not come within the class of cases where the driver is suddenly and unexpectedly confronted with an emergency by a child darting out from behind a parked automobile or other obstruction into the path of the oncoming car, making it unavoidable on the part of the driver strik *1236 ing the child. The Court said that the case before it came within the line of cases where the facts showed that the accident could have been avoided had the driver been traveling at the proper speed, keeping a proper lookout, and with his car under proper control.
In Campo v. Vampran, 183 So.2d 57 (La.App. 1st Cir. 1966) this Court said:
“The duty to exercise greater than ordinary care to avoid injury to a child does not become operative or exist in favor of such child until his presence is known or should have been known under the existing facts of the particular case to the operator or driver of a motor vehicle. The motorist, upon discovering the presence of children in his path of travel or in a position where they could become imperiled, is under a duty to exercise the highest degree of care to avoid injury to them. Each case must be adjudged on the facts peculiar to it. No one case is absolutely controlling of another, as few cases are identical factually.”
The Court in Bruno v. Daniels, 328 So.2d 739 (La.App. 4th Cir. 1976) quoted the above language and then went on to state the following:
“This statement points up two situations. If the driver notices children playing near the street then he is under a duty of great care as to them. If, for example, he sees children playing on the left side of the street and a child darts into his path from the right, he owes that child only a duty to exercise ordinary, reasonable care, unless he should have expected the child to be in that position. The duty of great care arises only upon the driver becoming aware of the child or under circumstances where he should have been aware of the child. . . .”
In light of the foregoing, the question is whether Sanders should have expected Angela Wicker to be in the position she occupied and thus had a special duty of care for her safety.
We call special attention to the language emphasized by the Court in the above quotation from Bruno v. Daniels, supra, stating that the duty to take special precautions is owed only to the children that a driver sees playing near the street. Though Sanders saw children playing in the yards across the road, the duty he had to take special precautions for their safety did not extend to Angela. We do not find it reasonable to expect Sanders to have foreseen Angela’s presence, and therefore, he had no duty to take special precautions for her safety.
For the above and foregoing reasons the judgment of the Trial Court is reversed insofar as it cast Leon Jackson and Amite Milling Company, Inc. in judgment, and plaintiff’s suit as to those defendants is dismissed. The judgment of the Trial Court in favor of Paul E. Sanders and Southern Farm Bureau Casualty Insurance Company and against Katie Nell Wicker dismissing the plaintiff’s suit is affirmed. All costs of this appeal are to be paid by plaintiff.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.