PARKER, Justice
(concurring specially).
I concur in the Court’s decision reversing the trial court’s judgment, rendering a *1192 judgment in favor of Jimmy Larry Bed-dingfield and Rebecca M. Beddingfield on the claims against them and in favor of Jim Cody Beddingfield on the strict-liability claim, and remanding the case to the trial court for a new trial as to the remaining claims against Cody. I write specially to note the common-law foundation upon which our decision rests and the role of the legislature to amend it, if necessary.

I. Parental Liability for the Torts of Minor Children at Common Law

The notion that parents are responsible for the upbringing of their children is so basic to our societal structure that it may seem intuitive that courts should hold parents liable for harm caused by the minor children they are responsible to nourish, educate, and train. The common law, however, found no such liability.
The basis in the common law for not holding parents vicariously liable for the torts of their minor children stems from the theory that a person is liable only for his or her own torts. See McCauley v. Wood, 2 N.J.L. 86, 86 (N.J.1806) (“Upon [common law] principles ... one person can never be made liable for the trespass of another.”).
In his Commentaries on the Laws of England, Sir William Blackstone found that, at common law, minor children were neither the same legal entity as their parents,[8] nor did they exist for the benefit of their parents.[9] Thus, there was no basis on which to impose vicarious liability on parents for the torts of their minor children.
American jurisprudence has largely followed the common-law rule that parents are not liable for the torts of their children.[10] McCauley v. Wood, supra,[11] is the earliest known American case involving a parent’s liability for the torts of his or her children. In McCauley, Aula M’Cauley Wood sued Hannah M’Calla alleging a trespass committed by M’Calla’s sons. In the absence of an applicable statute, the Supreme Court of New Jersey applied the common-law rule that *1193 2 N.J.L. at 86. The McCauley court recognized that children are separate legal entities from their parents and that children do not act on behalf of their parents unless under the parents’ command or authorization. Id. Therefore, the court held that M’Calla was not liable for her sons’ trespass; instead, the court held that .the children were liable for their own wrongdoing.
*1192 “one person can never be made liable for the trespass of another. It is true, that if one command or authorize his servant to commit a trespass, he is answerable himself; but then it is the trespass of the master, according to the well known maxim of the law, qui facit per alium facit per se,[12] and it must be so charged in the declaration or state of demand.”
*1193 The civil-law jurisdiction of Louisiana has not followed the common-law rule that parents are not vicariously liable for the torts of their children. In Mullins v. Blaise, 37 La. Ann. 92 (1885), the defendant’s six-year-old son shot a Roman candle toward a group of children and struck the plaintiffs minor daughter in the eye with one .of the “flaming balls.” Id. In finding for the plaintiff, the court stated:
“It is true that by reason of the tender years and lack of discernment of the minor, this fault may not be, in a legal sense, imputable to him. But ... that this is a reason for exempting the father from liability can find no recognition at our hands. The law itself imputes the fault to the father. It presumes that it resulted from lack of sufficient care, watchfulness and discipline on his part, in the exercise of the paternal authority. This is the very reason and foundation of the rule.
“For like reason the law imposes responsibility upon the owner for damage occasioned by his animals, who have certainly no greater powers of discernment than the infant of tender years.”

Id.

This form of strict liability for the torts of one’s children in a civil-law jurisdiction was articulated again by the Supreme Court of Louisiana in Johnson v. Butterworth, 180 La. 586, 613, 157 So. 121, 129 (1934), in which the court held that “the parent is responsible for a tort committed by his minor child, even though the parent could not have prevented the act that caused the injury.”
The Supreme Court of Missouri explained the difference between the civil law and the common law in Baker v. Haldeman, 24 Mo. 219 (1857):
“An opinion, we believe, prevails to some extent in the community, that a father must answer for all the civil injuries inflicted by his child, and we may suppose, therefore, that there is a foundation for this sentiment in the common sense of mankind. And accordingly, it was the doctrine of the early Roman law that if a child or a slave committed an injury, the person injured had a remedy for the wrong done him against the father or master, but he had no action against the son or the slave; and the father or master might either pay the damages to the injured person or surrender the offender to him. (Smith’s Dictionary of Greek and Roman Antiquities; ‘Noxalis Actio,’ Justinian Inst, by Saunders, Lib. 4, Tit. 8.) And in the Institutes it is said to be with great reason that the master is permitted to deliver up the offending slave; for that it would be very unjust, when a slave does a wrongful act, to make the master liable to lose any thing more than the slave itself; and that, although the ancients applied the same rule to children, yet the feeling of later times had rightly rejected such extreme rigor, and the surrender of children had passed wholly into disuse. The general principle of the Roman law, that every person is responsible not only for injuries caused by his own act, but for all that are caused by the act of persons and things under his dominion, is expressly adopted in the Civil Code of France (Art. 1384); but the responsibility of a father for the act of his minor child is not incurred there, *1194 if the father can prove that he was not able to prevent the act which gives rise to the responsibility; and the same principles are adopted and acted upon in the State of Louisiana. (Cleaveland v. Mayo, 19 La. 414 [(1841)] ....) Our unwritten law, however, imposes no such responsibility upon parent or master, although the statute law has made the master liable for certain specified offenses of his slave, not to exceed the slave’s value, the limit prescribed in the ancient Roman law. (Ewing v. Thompson, 13 Mo. 132 [ (1850) ].) The present plaintiff, therefore, had no cause of action against the defendant, even upon his own statement of his case.”
The common law rejected the Roman law and civil-law concepts of pecuniary liability for the harm caused by “persons and things” under a parent’s dominion. Id. Instead, the common law based liability upon the fault of the individual.

II. Alabama’s Adoption of the Common Law by Statute

Alabama adopted the common law by statute:
“The common law of England, so far as it is not inconsistent with the Constitution, laws and institutions of this state, shall together with such institutions and laws, be the rule of decisions, and shall continue in force, except as from time to time it may be altered or repealed by the Legislature.”
§ 1-3-1, Ala.Code 1975. See Hollis v. Crittenden, 251 Ala. 320, 323, 37 So.2d 193, 195 (1948) (“Alabama is a common law state....”). Alabama adopted the common law of England “where the common law is not in conflict with statutory or constitutional law.” Weaver v. G.D. Searle & Co., 558 F.Supp. 720, 721 (N.DAla. 1983). Therefore, in the absence of contrary statutory authority, Alabama follows the common-law rule that parents are not vicariously liable for the torts of their minor children. See Gray v. Meadows, 24 Ala.App. 487, 488, 136 So. 876, 877 (1931) (“[T]he mere fact of paternity does not make the father liable for the torts of his minor child.”); Winfrey v. Austin, 260 Ala. 439, 443, 71 So.2d 15, 18 (1954); and Dixie Auto Ins. Co. v. Steele, 288 Ala. 459, 463, 262 So.2d 283, 286 (1972).
In 1965, the Alabama Legislature altered the common-law rule that parents are not vicariously liable for the torts of their minor children by imposing liability upon parents or guardians for “all damages proximately caused by the injury to, or destruction of, any property, real, personal or mixed, by the intentional, willful, or malicious act or acts of the minor.” § 6-5-380, Ala.Code 1975. The liability imposed by § 6-5-380 was originally capped at $500, but was raised to $1,000 in 1994 by Act No. 94-819, Ala. Acts 1994.
It is the role of the judiciary to strictly construe statutes that “alter or repeal” the common law. Arnold v. State, 353 So.2d 524, 526 (Ala.1977) (“Statutes in derogation or modification of the common law are strictly construed. Such statutes are presumed not to alter the common law in any way not expressly declared.”); Sutherland v. Roth, 407 So.2d 139 (Ala.Civ.App.1981). Because § 6-5-380 imposes liability for only property damage caused by “intentional, willful, or malicious” acts of minor children, the common law still applies to property damage and other damage caused by all other actions of minor children. Nor does there exist any basis under the common law or the Alabama Code for recognizing causes of action for negligent supervision or wanton supervision of one’s children.
Lastly, I note that it is not the role of this Court to sit in judgment of the wisdom of the enactments of the legislature. *1195 Suttles v. Roy, 75 So.3d 90, 104 (Ala.2010) (“ ‘[I]t is well established that the legislature, and not this Court, has the exclusive domain to formulate public policy in Alabama.’ ” (Shaw, J., concurring specially) (quoting Boles v. Parris, 952 So.2d 364, 367 (Ala.2006))). See also Ala. Const.1901, Art. Ill, § 43 (“In the government of this state ... the judicial [department] shall never exercise the legislative and executive powers, or either of them.... ”). Furthermore,
“ ‘[f]or every wrong, there is a remedy,’ it has been said, and it is true of this question. Every one is held responsible for his own acts, regardless of sex, age or condition of mind. The property rights of every one are sacred; every infraction of them renders the disturber liable. It may be said that, as a general rule, minors possess no property, and that, therefore to pursue them, would be futile. But it has always been the policy of the law to entirely ignore the question of wealth or poverty, in determining the law. Such questions have no influence upon the judicial mind ... [T]he legislatures should be appealed to, to supply what is necessary.”
Elisha Greenhood, Liability of a Parent for the Torts of His Minor Children, 18 Cent. L.J. 3, 7 (1884) (cited by William L. Prosser, Prosser on the Law of Torts § 123 n. 33 (4th ed.1971)). I agree. If the remedy for a child’s tort under the common law is insufficient, it is the responsibility of the legislature, not the courts, to address the problem.

.The common law imposed upon parents three duties to their minor children: (1) maintenance, (2) protection, and (3) education. In return, children owed their parents obedience, honor, and support in their old age. See 1 William Blackstone, Commentaries, *446-54. There was never, however, a merger of legal identity. A father had no power over his son’s estate, except as a trustee or guardian, for which the father was required to give an accounting when his son reached the age of majority. Id. at *453. Because parents have always been viewed as separate legal entities from their children, there was never a basis for vicarious liability, except if the minor was acting on behalf of a parent.

. "[CJhildren are brought into this world, not for the gratification of their parents, but in the fulfillment of duties to mankind....” Elisha Greenhood, Liability of a Parent for the Torts of His Minor Children, 18 Cent. L.J. 3, 7 (1884) (cited by William L. Prosser, Prosser on the Law of Torts § 123 n. 33 (4th ed.1971)).

. As a civil-law state, Louisiana does not follow the common law.

. Although this case is styled “McCauley v. Wood," the parties’ names are stated in the text of the opinion as "Aula M’Cauley Wood” and "Hannah M’Calla.”

. "He who acts through another, acts himself."